# Robbins Geller Rudman & Dowd LLP

Atlanta  Chicago  Melville  Philadelphia  San Francisco
Boca Raton  Manhattan  Nashville  San Diego  Washington, DC

Patrick J. Coughlin
patc@rgrdlaw.com

June 27, 2016

<u>VIA ECF</u>

The Honorable William H. Alsup
United States District Court
   for the Northern District of California
450 Golden Gate Avenue
Courtroom 8 – 19th Floor
San Francisco, CA  94102

      Re:   *B & R Supermarket, Inc., v. Visa, Inc.*,
             No. 3:16-cv-01150-WHA (N.D. Cal.)

Dear Judge Alsup:

      Per Your Honor's request for a summary of pertinent antitrust cases against the payment card industry, Plaintiffs provide the following information. The industry has long been subject to antitrust scrutiny by public and private litigants, both here and abroad. The following provides only a snapshot of the underlying history and its application to the instant case.

      One of the first major cases against the credit card networks was a 1998 United States Department of Justice civil enforcement action against Visa and MasterCard challenging the organizational structure of the two payment networks and the networks' rules. *See* Ex. 1, *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003). Following a 34-day bench trial, the district court found Visa's and MasterCard's "exclusionary" or "exclusivity" rules, which prohibited members of the networks (the banks) from issuing the cards of competitors (such as Discover and American Express) violated Section 1 of the Sherman Act. *See* Ex. 2, *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d. 322 (S.D.N.Y. 2001). At the time, Visa and MasterCard were organized as joint ventures owned and controlled by their member banks. The Second Circuit's opinion provides details regarding how the networks had been set up prior to the public offerings, as well as a cogent description of the Discover and American Express networks. *See* Ex. 1 at 235-36.[1]

---

[1]    Specifically, in that case, the court found:

>Visa U.S.A.'s By-law 2.10(e) and MasterCard's Competitive Programs Policy ("CPP") do weaken competition and harm consumers by: (1) limiting output of American Express and Discover cards in the United States; (2) restricting the competitive strength of American Express and Discover by restraining their merchant acceptance levels and their ability to develop and distribute new features

1160303_1

655 West Broadway   Suite 1900   San Diego, CA 92101   Tel 619 231 1058   Fax 619 231 7423   www.rgrdlaw.com

In 2000, various large and small merchants, as well as certain trade associations, brought an antitrust class action against Visa and MasterCard alleging that their "honor all cards" policy created a tying arrangement in violation of Section 1 of the Sherman Act. The policy required a merchant accepting a defendants' credit card to also accept their debit card. *See* Ex. 3, *In re VisaCheck/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). The merchants also brought claims under Section 2, arguing that Visa and MasterCard were attempting to monopolize the debit card services market. *See* Ex. 4, *In re VisaCheck/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2003 U.S. Dist. LEXIS 4965, at *5-*6 (E.D.N.Y. Apr. 1, 2003). This long-running litigation eventually settled for more than $3 billion dollars and resulted in Visa and MasterCard changing certain rules regarding the "honor all cards" policy.

In 2004, American Express sued Visa, MasterCard and many of the networks' member banks in the Southern District of New York under Section 1 of the Sherman Act for conduct condemned in *United States v. Visa U.S.A., Inc.*, discussed above. *See* Ex. 5, Complaint in *American Express Travel Related Services Co., Inc. v. Visa U.S.A., Inc.*, No. 04 cv 08967 (S.D.N.Y.). In the 2004 case, American Express alleged that the networks and the member banks worked together to adopt exclusionary rules which harmed American Express. Visa eventually settled with American Express in November 2007 for $2.25 billion and MasterCard reached a settlement with American Express in June 2008 for $1.8 billion. The settlements also covered the claims against the member bank defendants. Neither MasterCard nor Visa acknowledged any wrongdoing.

In 2005, large and small merchants, along with trade associations, brought suit against Visa, MasterCard and various member banks, challenging under the antitrust laws various aspects of the networks' rules, including the default interchange rules, as well as numerous so called anti-steering restraints. Judge Gleeson in the Eastern District of New York was assigned the actions, which were consolidated as *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-1720 (E.D.N.Y.) ("Interchange litigation"). The anti-steering restraints were a package of rules which worked together to prohibit merchants from using certain price signals at the point of sale to steer customers to less costly forms of payment. After extensive litigation, including more than 400 depositions, the production and review of more than 80 million pages of documents, as well as numerous expert depositions and expert reports, the case settled for more than $7 billion in

---

such as smart cards; (3) effectively foreclosing American Express or Discover from competing to issue off-line debit cards, which soon will be linked to credit card functions on a single smart card, and (4) depriving consumers of the ability to obtain credit cards that combine the unique features of their preferred bank with any of four network brands, each of which has different qualities, characteristics, features, and reputations.

Ex. 2 at 329.

The Honorable William H. Alsup
June 27, 2016
Page 3

cash (which was reduced to about $5.25 billion after accounting for opt outs) and reforms to defendants' rules.[2] Those reforms included the elimination of Visa and MasterCard's no-surcharge rules. Plaintiffs challenged a number of rules that "work together to prevent inter-brand competition between each network's cards at the point of sale." Ex. 6, *Payment Card* Final Approval Order at 32. As Judge Gleeson explained:

> If a customer presents a Visa card for payment, the Honor-all-Cards rule requires the merchant to accept it (unless the merchant chooses not to accept ***any*** Visa credit cards, an unlikely option given their ubiquity). The no-surcharge rule further prohibits the merchant from steering the customer to a competing MasterCard credit card with a lower interchange rate by surcharging the higher-priced Visa card. The allegedly supracompetitive interchange rate on the Visa card is hidden by the combined effects of the rules and the merchant is forced to pay it.

*Id*. (emphasis in original). The change in the rules as a result of the settlement was significant. "The ability to surcharge allows merchants to recoup the higher acceptance costs of the expensive cards. It allows them to steer customers to less costly cards or to other payment mechanisms, decreasing their card-acceptance costs. It allows market forces to operate on the previously invisible (to customers) array of interchange fees, and will exert downward pressure on those fees by injecting a form of competition the current rules have prohibited." *Id*. at 33.[3]

Additionally, while the Interchange litigation was pending, there were "significant developments" in the payment card industry, some of which were "attributable in whole or in part" to the case itself. Most notably, the structures of Visa and MasterCard changed from a consortium of competitor banks into publicly traded companies, although the banks still play a significant role

---

[2] The settlement is currently on appeal. The matter is fully briefed before the Second Circuit. The Second Circuit heard oral argument in September 2015.

[3] Internationally, the various card networks have also been subject to extensive scrutiny. In 2007, MasterCard was the subject of a significant ruling by the EU related to its cross-border interchange fees. *See* Ex. 7, The European Commission Decision (Dec. 19, 2007). That case found MasterCard's rules restricted competition. Later, in 2013, the European Commission opened another investigation into MasterCard's business practices and issued a Statement of Objections in July 2015 outlining its view that the company had breached European antitrust rules by setting artificially high minimum prices for processing certain transactions. *See* Ex. 8, Press Release re European Commission Statement of Objections to MasterCard (July 9, 2015). Visa has also been subject to action by the EU. Ex. 9, Press Release re Supplementary Statement of Objections to Visa (July 31, 2012). In 2014, the EU rendered legally binding certain commitments offered by Visa Europe to cut certain interchange fees. Proceedings against Visa Inc. in relation to certain international inter-bank fees is continuing. Ex. 10, Summary of Commission Decision (Feb. 26, 2014); *see also* http://ec.europa.eu/competition/sectors/financial_services/enforcement_en.html.

the direction and implementation of the networks' rules. Federal legislation called the Durbin Amendment was enacted in 2010. This legislation removed certain restrictions on discounting credit and debit cards at the network level.[4] The Durbin Amendment, which affects payment card networks and issuers with some limitations, makes it so that those networks "can no longer prohibit merchants from discounting their cards." Ex. 6 at 5; *see also* Ex. 11. Under the Durbin Amendment, the Federal Reserve Board issued regulations that set the maximum permissible interchange fee that an issuer may receive for an electronic debit transaction and set rules related to how transactions could be routed. *Id.*

In 2010, the Department of Justice, assisted by information plaintiffs developed in the Interchange litigation, filed lawsuits against Visa, MasterCard and American Express charging them with anticompetitive conduct. *See* Ex. 12, Complaint in *United States v. American Express Co.*, No. 1:10-CV-4496-NGG-CLP (E.D.N.Y.). In the government's Complaint, the Department of Justice, along with the attorneys general of several states, charged Visa, MasterCard and American Express with violations of Section 1 of the Sherman Act. *See id.* The complaint, filed in the Eastern District of New York, charged the networks with imposing on merchants "certain rules, policies, and practices ("Merchant Restraints") that insulated Defendants from competition." *Id.*, ¶2. The Complaint further charged that the restraints "impede merchants from promoting or encouraging the use of a competing credit or charge card with lower card acceptance fees." *Id.* Each defendant's vertical Merchant Restraints are directly aimed at restraining horizontal interbrand competition. Visa and MasterCard acceded to entry of a consent decree on July 20, 2011. *See* Ex. 13, *American Express Co.* July 20, 2011 Consent Agreement. The consent decree prohibited Visa and MasterCard from enforcing certain rules that prohibit merchants from encouraging customers to pay with a competing credit card or with cash, checks or debit cards. The consent decree also restricts rules that prohibit merchants from promoting a particular type of payment through customer discounts, rebates, or free goods and services. Also limited were MasterCard and Visa's rules requiring that banks' contracts with merchants contain provisions preventing vendors from discouraging the use of a Visa or MasterCard subject to higher interchange fees. The consent decree also barred the defendants from imposing any rules or agreements restraining merchants from encouraging customers to pay with a competing credit card or with cash, checks or debit cards.[5]

---

[4] *See* Ex. 11, Debit Card Interchange Fees and Routing, 76 Fed. Reg. 43, 394 (July 20, 2011) (to be codified at 12 C.F.R. pt. 235)

[5] In seeking to dismiss a number of cases dealing with this industry, Defendants Visa and MasterCard have relied on *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (Ex. 14), which, in many cases, prohibits an indirect purchaser from pursuing an anticompetitive claim. The parties addressed these issues in their initial Motion to Dismiss briefing. The

While Visa and MasterCard entered into the consent decree, American Express decided to litigate against the government. That case, tried before Judge Garaufis in the Eastern District of New York during a seven-week bench trial during the Summer of 2014, resulted in a 150-page Order finding American Express liable for antitrust violations related to certain of its rules.[6] *See* Ex. 15, *American Express Co.*, Decision (Feb. 19, 2015). As the court noted, the payment card market is "highly concentrated and distorted by a history of antitrust violations." *Id*. at 4. The key provisions at issue in the government's case against American Express were its so-called Non-Discrimination Provisions ("NDPs"). These rules, formulated to control the manner in which merchants were allowed to treat American Express cardholders, limited merchants' ability to "steer" cardholders to other, potentially lower cost forms of payment. *See id.* at 23-32 (discussing the NDPs). These rules forbid merchants from, for example, criticizing the card or trying to dissuade a customer from using one. *See id.* at 25. In practice, the court found "the NPDs operate to block Amex-accepting merchants from encouraging their customers to use any credit or charge card other than an American Express card, even where that card is less expensive for the merchant to accept." *Id.* The court further found that the "challenged restraints have impaired the competitive process in the network services market, rendering low-price business models untenable, stunting innovation, and resulting in higher prices for merchants and their consumer." *Id*. at 98.

Even in a long history of anticompetitive behavior in payment card industry, the Liability Shift is unique in that all four card networks joined together to implement policies specifically intended to cost merchants billions.

                    Respectfully submitted,

                    s/ Patrick J. Coughlin

                    PATRICK J. COUGHLIN

PJC:jpk
Attachments

---

*Illinois Brick* rule is inapplicable here where it is the merchant that pays 100% of any of the chargebacks at issue in this litigation. Further, even if the rule were applicable here, it does not bar claims for injunctive relief.

[6]    That decision is also being appealed and is currently pending before the Second Circuit.

CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 27, 2016.

s/ Patrick J. Coughlin<br>
PATRICK J. COUGHLIN<br><br>
ROBBINS GELLER RUDMAN<br>
    & DOWD LLP<br>
655 West Broadway, Suite 1900<br>
San Diego, CA 92101-8498<br>
Telephone: 619/231-1058<br>
619/231-7423 (fax)<br>
E-mail: patc@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-01150-WHA B & R Supermarket, Inc., et al v. Visa, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mikael A. Abye**
  mabye@shearman.com,ron.cheatham@shearman.com,bhunter@shearman.com

- **Courtney Bedell Averbach**
  caverbach@reedsmith.com,courtney-averbach-3429@ecf.pacerpro.com,reed-smith-2312@ecf.pacerpro.com

- **Scott D. Baker**
  sbaker@reedsmith.com,cmosqueda@reedsmith.com,etaglang@reedsmith.com,cshanahan@reedsmith.com,scott-baker-8371@ecf.pacerpro.com,drothschild@reedsmith.com,cristi-shanahan-4367@ecf.pacerpro.com,reed-smith-2312@ecf.pacerpro.com

- **Randi D. Bandman**
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John Eliot Beerbower**
  jbeerbower@hunton.com

- **Paul Belonick**
  pbelonick@sidley.com,sfefilingnotice@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com

- **Craig A Benson**
  CBenson@paulweiss.com,wmcauliffe@paulweiss.com,mao_fednational@paulweiss.com

- **Jane Petersen Bentrott**
  jbentrott@mofo.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,E_File_SD@rgrdlaw.com,jkusy@rgrdlaw.com,AZohrabian@rgrdlaw.com

- **Boris Bershteyn**
  boris.bershteyn@skadden.com

- **Daniel I Booker**
  dbooker@reedsmith.com,dalioto@reedsmith.com

- **Andrew Baldwin Brantingham**
  brantingham.andrew@dorsey.com,hanson.katheryn@dorsey.com

- **Lonnie Anthony Browne**
  LBrowne@rgrdlaw.com

- **Brian Calandra**
  brian.calandra@shearman.com

- **Melissa Colon-Bosolet**
  mcolon-bosolet@sidley.com,nyefiling@sidley.com

- **Erica M Connolly**
  erica.connolly@aporter.com,terry.metasavage@aporter.com,sfcalendar@aporter.com

- **Dana Lynn Cook-Milligan**
  dlcook@winston.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ethan Craig**
  ecraig@btlaw.com

- **John William Devine**
  jdevine@devinegoodman.com

- **William Yates Durbin**
  WDurbin@paulweiss.com,fvella@paulweiss.com,cyang@paulweiss.com,abaniel-stark@paulweiss.com

- **Howard Feller**
  hfeller@mcguirewoods.com

- **Tiffani B Figueroa**
  TFigueroa@mofo.com

- **Natalie Anne Fleming Nolen**
  nflemingnolen@mofo.com

- **Kenneth A. Gallo**
  kgallo@paulweiss.com,mlaramie@paulweiss.com

- **Cheryl Ann Galvin**
  cgalvin@tcolaw.com

- **Lawrence Dean Goodman**
  lgoodman@devinegoodman.com,alopez@devinegoodman.com,smallet@devinegoodman.com

- **David F. Graham**
  dgraham@sidley.com,efilingnotice@sidley.com

- **Peter E Greene**
  peter.greene@skadden.com

- **Alexander Guney**
  alexander.guney@sedgwicklaw.com

- **D. Bruce Hoffman**
  bhoffman@hunton.com,acordero@hunton.com

- **Peter K. Huston**
  phuston@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com,hebalogi@sidley.com

- **Susan S. Joo**

sjoo@hunton.com,jocampo@hunton.com

- **J. Brent Justus**
  bjustus@mcguirewoods.com

- **Raoul Dion Kennedy**
  raoul.kennedy@skadden.com,alissa.turnipseed@skadden.com,james.schaefer@skadden.com,sarah.wood@skadden.com

- **Benjamin Klebanoff**
  benjamin.klebanoff@shearman.com

- **Leslie Kostyshak**
  lkostyshak@hunton.com,jbeerbower@hunton.com

- **Harry P Koulos**
  harry.koulos@skadden.com

- **Evan R Kreiner**
  evan.kreiner@skadden.com

- **Robert J Kuntz , Jr**
  rkuntz@devinegoodman.com,vcerra@devinegoodman.com

- **Mark P. Ladner**
  mladner@mofo.com,nflemingnolen@mofo.com,stice@mofo.com,docketny@mofo.com

- **Alexandra Eve Laks**
  alaks@mofo.com,ggerrish@mofo.com

- **Angel Puimei Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Qiguang Liu**
  liu.richard@dorsey.com,buresh.cassie@dorsey.com

- **Bradley Robert Love**
  bradley.love@btlaw.com,deb.adams@btlaw.com

- **Casey Erin Lucier**
  clucier@mcguirewoods.com

- **Martha Corcoran Luemers**
  eFilingPA@dorsey.com,luemers.martha@dorsey.com,hobbs.wendy@dorsey.com

- **Michelle Ann Mantine**
  mmantine@reedsmith.com,michelle-mantine-7250@ecf.pacerpro.com,dsharp@reedsmith.com,docketingecf@reedsmith.com,reed-smith-2312@ecf.pacerpro.com,jeremy.feinstein@pnc.com,sament@reedsmith.com

- **Sharon D. Mayo**
  sharon.mayo@aporter.com,robert.culhane@aporter.com,Joanna.Lee@aporter.com,Emily.Clark@aporter.com,sfcalendar@aporter.com,Jill.Hernandez@aporter.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com,E_File_SD@rgrdlaw.com,ckopko@rgrdlaw.com

- **Sean D. Meenan**
  smeenan@winston.com,lschuh@winston.com,recordssf@winston.com,pacercourtfile@winston.com,docketsf@winston.com,lpearce@winston.com

- **Mark R Merley**
  Mark.Merley@APORTER.COM

- **Kendall Millard**
  kmillard@btlaw.com,kristin.johnson@btlaw.com,lroberts@btlaw.com

- **Michael B. Miller**
  mbmiller@mofo.com,docketny@mofo.com

- **David W. Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph Laurence Motto**
  JMotto@winston.com,ahodgson@winston.com

- **Dennis Francis Murphy**
  dennis.murphy@sedgwicklaw.com

- **Benjamin Robert Nagin**
  bnagin@sidley.com,nyefiling@sidley.com

- **Karen C Otto**
  karen.otto@aporter.com

- **Elizabeth P Papez**
  epapez@winston.com

- **Jeanifer Ellen Parsigian**
  jparsigian@winston.com,hhammon@winston.com,docketsf@winston.com

- **Angela Maryssa Porter**
  porter.angela@dorsey.com,vallant.tammy@dorsey.com

- **David Carlyle Powell**
  dpowell@mcguirewoods.com,ladocket@mcguirewoods.com,usdocket@mcguirewoods.com,shorne@mcguirewoods.com,izabala@mcguirewoods.com,mbetti@mcguirewoods.com,mdylak@mcguirewoods.com

- **Penelope Athene Preovolos**
  ppreovolos@mofo.com,lroiz@mofo.com

- **Roya Rahmanpour**
  roya.rahmanpour@btlaw.com,marjory.dingwall@btlaw.com

- **Alicia M Raines**
  araines@btlaw.com,pflynn@btlaw.com

- **Frederick Matthew Ralph**
  ralph.matthew@dorsey.com,stilson.jaime@dorsey.com,fairbairn.mary@dorsey.com,Kelly.Laurie@dorsey.com

- **Paul Jeffrey Riehle**

- **Paul Jeffrey Riehle**
  paul.riehle@sedgwicklaw.com,SDMAcalendaring@sedgwicklaw.com,phyllis.flynn@sedgwicklaw.com

- **Patrick David Robbins**
  probbins@shearman.com,rcheatham@shearman.com

- **Lauren Kelley Ross**
  lross@cravath.com,mao@cravath.com

- **Conor Michael Shaffer**
  cshaffer@reedsmith.com

- **Ashley Lynn Shively**
  ashively@reedsmith.com,dkelley@reedsmith.com

- **Ryan A Shores**
  rshores@hunton.com,gjenkins@hunton.com

- **Robert Yale Sperling**
  rsperling@winston.com

- **James Patrick Tallon**
  jtallon@shearman.com,iwiener@shearman.com

- **Stephen E. Taylor**
  staylor@tcolaw.com,cdunbar@tcolaw.com

- **Robert John Vizas**
  robert.vizas@aporter.com,marie.zambrano@aporter.com,SFCalendar@aporter.com

- **Jamie Danielle Wells**
  jwells@mcguirewoods.com,ladocket@mcguirewoods.com,dmolakides@mcguirewoods.com

- **Rowan D. Wilson**
  rwilson@cravath.com,mao@cravath.com,kkaplan@cravath.com

- **Jennifer Michelle Wong**
  jennifer.wong@sidley.com,nyefiling@sidley.com

- **Catherine M Yang**
  CYang@paulweiss.com,mao_fednational@paulweiss.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`