1  Elizabeth P. Papez (*pro hac vice*)
   WINSTON & STRAWN LLP
2  1700 K Street, N.W.
   Washington, DC 20006
3  Telephone: (202) 282-5000
   Facsimile: (202) 282-5100
4  *epapez@winston.com*

5  Robert Y. Sperling (*pro hac vice*)
   WINSTON & STRAWN LLP
6  35 West Wacker Drive
   Chicago, IL 60601
7  Telephone: (312) 558-5600
   Facsimile: (312) 558-5700
8  *rsperling@winston.com*

   Sean D. Meenan (SBN 260466)
   Jenifer E. Parsigian (SBN 289001)
   Dana Cook-Milligan (SBN 301340)
   WINSTON & STRAWN LLP
   101 California Street
   San Francisco, CA 94111
   Telephone: (415) 591-1000
   Facsimile: (415) 591-1400
   *smeenan@winston.com*
   *jparsigian@winston.com*
   *dlcook@winston.com*

   *Attorneys for Defendant Discover Financial Services*

9
10
11

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| B & R SUPERMARKET, INC et al., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>VISA, INC., et al.,<br><br>        Defendants. | Case No. 3:16-cv-01150-WHA<br><br>**DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 22, 2016<br>Time:    8:00 am<br>Place:   Courtroom 8, 19th Floor,<br>        San Francisco Courthouse<br>        450 Golden Gate Avenue,<br>        San Francisco, CA 94102<br>Judge:  Hon. William Alsup |

*left margin:* Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        Please take notice that on September 22, 2016 at 8:00 a.m., or as soon thereafter as the matter

3   may be heard, in the courtroom of the Honorable Judge William Alsup, Courtroom 8, 19th Floor,

4   San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Discover

5   Financial Services ("Discover") will, and hereby does, move for an order dismissing Plaintiffs'

6   Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

7        Discover seeks dismissal with prejudice of all claims against it.

8        This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

9   of Points and Authorities, the pleadings on file in this action, and upon such other matters as may be

10  properly presented to the Court at the time of hearing.

11  Dated:  August 5, 2016            WINSTON & STRAWN LLP

12                 By:  */s/ Elizabeth P. Papez*
13                      Elizabeth P. Papez (*pro hac vice*)
                    WINSTON & STRAWN LLP
14                      1700 K Street, N.W.
                    Washington, DC 20006
15                      Telephone: (202) 282-5000
                    Facsimile: (202) 282-5100
16                      *epapez@winston.com*

17                      Robert Y. Sperling (*pro hac vice*)
                    WINSTON & STRAWN LLP
18                      35 West Wacker Drive
                    Chicago, IL 60601
19                      Telephone: (312) 558-5600
                    Facsimile:  (312) 558-5700
20                      *rsperling@winston.com*

21                      Sean D. Meenan
                    Jeanifer E. Parsigian
22                      Dana Cook-Milligan
                    WINSTON & STRAWN LLP
23                      101 California Street
                    San Francisco, CA 94111
24                      Telephone: (415) 591-1000
                    Facsimile: (415) 591-1400
25                      smeenan@winston.com
                    jparsigian@winston.com
26                      dlcook@winston.com

27                      Attorneys for Defendant
28                      DISCOVER FINANCIAL SERVICES

1

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES ................................................................................................ 1

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT FACTUAL ALLEGATIONS ...................................................................... 4

ARGUMENT ..................................................................................................................... 6

    I.       PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT DISCOVER ENTERED AN ANTICOMPETITIVE AGREEMENT WITH RIVAL NETWORKS OR ISSUERS ......................................................................... 6

    II.     THE AMENDED COMPLAINT ALSO FAILS ADEQUATELY TO PLEAD THE REMAINING ELEMENTS OF ITS CLAIMS AGAINST DISCOVER ......... 13

    A.     Plaintiffs Fail Adequately to Plead Antitrust Injury or Causation ............................. 13

    B.     Plaintiffs' State Law Claims Against Discover Also Warrant Dismissal ................... 15

        1.     Plaintiffs' State Law Claims Are Inadequately Pled ...................................... 16

        2.     The State Law Claims Also Fail For State-Law Specific Deficiencies .......... 16

        3.     Plaintiffs' Unjust Enrichment Claim Also Fails ............................................. 18

CONCLUSION ................................................................................................................. 18

i

DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT Div. of Skylight, Inc. v. Assoc. Press,*
    181 F.3d 216 (2d Cir. 1999).................................................................................................1

*Apex Oil, Co. v. DiMauro,*
    822 F.2d 246 (2d Cir. 1987)................................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................................1, 12, 17

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983)..........................................................................................................15

*Athena Feminine Techs. Inc. v. Wilkes,*
    No. C 10-04868 SBA, 2011 WL 4079927 (N.D. Cal. Sept. 13, 2011)...........................17

*Atl. Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990)..........................................................................................................15

*In re ATM Fee Antitrust Litig.,*
    686 F.3d 741 (9th Cir. 2012) .......................................................................................13, 15

*In re Auto. Refinishing Paint Antitrust Litig.,*
    515 F. Supp. 2d 544 (E.D. Pa. 2007) ...............................................................................16

*Bailey v. Avis Budget Grp.,*
    No. 12-01486, 2013 WL 183998 (N.D. Cal. Jan. 17, 2013) (Alsup, J.)..........................18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................. *passim*

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994) ................................................................................................8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)....................................................................................................13, 15

*In re Cal. Title Ins. Antitrust Litig.,*
    No. C 08-01341 2009 WL 1458025 (N.D. Cal. May 21, 2009) .................................1, 12

*In re Citric Acid Litig.,*
    191 F.3d 1090 (9th Cir. 1999) ..........................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coburn v. Bank of New York Mellon, N.A.*,
No. 2:10-CV-03080 JAM, 2011 WL 1103470 (E.D. Cal. Mar. 22, 2011) ...................................17

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) ...........................................................................................................................2

*Dao v. Univ. of California et. al.*,
No. C–04–2257-JCS, 2004 WL 1824129 (N.D. Cal. Aug. 13, 2004) ............................................8

*Denison v. Citifinancial Servicing, LLC*,
No. C 16 -00432-WHA, 2016 WL 3443380 (Alsup, J.) ...............................................................12

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) .........................................................................................16

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ......................................................................................18

*Eclectic Props. East LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......................................................................................................11

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) (Alsup, J.) ....................................................................18

*Foman v. Davis*,
371 U.S. 178 (1962) .....................................................................................................................13

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) (Alsup, J.) .........................................................6, 10, 11

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .....................................................................................................................13

*ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*,
No. C 15-02965 WHA, 2015 WL 9300519 (N.D. Cal. Dec. 22, 2015) (Alsup, J.) ....................18

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ............................................................................................ *passim*

*Mack v. South Bay Beer Distributors, Inc.*,
798 F.2d 1279 (9th Cir. 1986) .......................................................................................................8

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
5
    475 U.S. 574 (1986)........................................................................................................4

6

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)..........................................................................................6
7

8

*McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.*,
    No. 09-62033-CIV, 2011 WL 2118701 (S.D. Fla. May 27, 2011)................................16

9

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
10
    235 F. Supp. 2d 1269 (M.D. Fla. 2002)......................................................................16

11

*In re Musical Instruments & Equipment Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ...........................................................................6, 10, 11
12

13

*Or. Teamster Emp'rs Trust v. Hillsboro Garbage Disposal, Inc.*,
    800 F.3d 1151 (9th Cir. 2015) ....................................................................................13

14

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
15
    939 F. Supp. 2d 1002 (N.D. Cal. 2013) ......................................................................16

16

*Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*,
    467 F.3d 283 (2d Cir. 2006).................................................................................13, 15
17

18

*Romero v. Flowers Bakeries, LLC*,
    No. 14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ......................15, 18

19

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
20
    661 F. Supp. 2d 218 (E.D.N.Y. 2009) ........................................................................16

21

*Spirit Locker, Inc. v. EVO Direct, LLC*,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ........................................................................16
22

23

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ........................................................................18

24

*Stubhub, Inc. v. Golden State Warriors, LLC*,
25
    No. C 15-1436, 2015 WL 6755594 (N.D. Cal. Nov. 5, 2015)......................................16

26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011) ........................................................................18

27

28

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Universal Grading Serv. v. eBay, Inc.*,
    No. C-09-2755 RMW, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012).................................................12

*Wilson v. EverBank, N.A.*,
    77 F. Supp. 3d 1202 (S.D. Fla. 2015) ........................................................................................17

**Statutes**

Cal. Bus. & Prof. Code §16700 ........................................................................................................15

Cal. Bus. & Prof. Code §17200, *et seq.* ...........................................................................................16

## STATEMENT OF ISSUES

1.      Whether Plaintiffs' Amended Complaint should be dismissed with prejudice for failing adequately to plead that Discover adopted the challenged chargeback policies pursuant to an unlawful agreement.

2.      Whether Plaintiffs' Amended Complaint should be dismissed with prejudice for failing adequately to plead the remaining elements of the federal and state claims it asserts.

## PRELIMINARY STATEMENT

Plaintiffs' burden on this third round of pleading was to identify "all reliable and well-pled information supporting their claim" that the chargeback policies they challenge were more plausibly the result of conspiracy or agreement than independent parallel action.  (Dkt. 281 at 1-2); *see generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But Plaintiffs' allegations against Discover confirm that their new complaint suffers from the same problem the Court identified with their prior one:  it "glide[s] over, like a fast glide over thin ice," the factual allegations and legal elements required to state a violation of federal or state competition laws.  (Tr. 6/23/16 at 14:11-12.)  The Amended Complaint pleads no direct evidence of an unlawful agreement, (AC ¶ 146), nor any facts or "plus factors" sufficient to support a plausible inference of conspiracy implicating any—much less each—of the named defendants. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (complaint must plead "who, did what, to whom (or with whom), where, and when"); *AD/SAT Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 234 (2d Cir. 1999) (antitrust claims require evidence that "each defendant" participated in the conspiracy); *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009) (same).  These grounds for dismissal are detailed in the Network and Issuing Bank motions, which this submission complements by addressing allegations specific to Discover that are inadequately pled or facially implausible, and thus compel dismissal of the Amended Complaint with prejudice because it ties Plaintiffs' "best case" to claims of a "unique[]" conspiracy involving "all four networks."  (Dkt. 285 at 5; AC ¶ 150.)

1    Plaintiffs' threshold assertion—that the "Issuing Banks" who benefit from the

2   liability shift "entered into an illegal agreement with the Networks to implement [the shift]," (AC ¶

3   8)—is both legally insufficient to state a Section 1 violation, *see, e.g.*, *Kendall*, 518 F.3d at 1048

4   ("[c]harging, adopting or following the fees set by a [Network] is insufficient as a matter of law" to

5   state a conspiracy claim), and facially implausible as to Discover.  Plaintiffs concede that Discover

6   Bank is the primary issuer for Discover Network, (AC ¶¶ 3, 8, 58), do not (and cannot) accuse

7   Discover of conspiring with itself, *see, e.g.*, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752,

8   771 (1984), and do not allege any agreements between Discover Bank and Visa, MasterCard,

9   American Express, or any of the Issuing Bank Defendants here.  Accordingly, Plaintiffs' reliance on

10   Issuing Bank agreements to abide EMV-related network rules, (AC ¶ 8), provides no plausible basis

11   for their Section 1 claims against Discover.

12    Plaintiffs likewise confirm the implausibility of their claims by tying them to the

13   assertion that Discover entered an unlawful network-level agreement with Visa, MasterCard,

14   American Express, with or through EMVCo. LLC ("EMVCo"), to impose EMV-related liabilities on

15   the putative merchant class.  (AC ¶ 9.)  Plaintiffs concede that each Network sets its own rules for

16   the allocation of chargeback liability, (*id*. ¶¶ 70-81, 184), and admit that the Networks announced

17   their challenged liability policies on separate dates ranging from August 2011 (Visa) through

18   November 2012 (Discover), (*id*. ¶ 150.).  In June, the Court directed Plaintiffs to "plead their best

19   case" that these separate announcements resulted from unlawful agreement rather than parallel but

20   "independent" business decisions.  (Dkt. 281 at 1-2); *Twombly*, 550 U.S. at 553.  But the Amended

21   Complaint's threadbare and implausible allegations against Discover confirm that Plaintiffs cannot

22   meet this dispositive pleading burden.

23    Plaintiffs allege no direct evidence of conspiracy.  They seek to meet their *Twombly*

24   burden principally by alleging circumstantial evidence that "the Networks" unlawfully agreed not to

25   compete over EMV rollout terms in order to "reap billions in chargebacks, without a loss in market

26   share, and maintain their high interchange fees" and associated profits from "signature-based

27   transactions" and "anti-steering rules."  (AC ¶¶ 9, 121, 147-50.)  There are many problems with

28

2

these allegations, chief among them a failure to allege any plausible basis for concluding that Discover would conspire with its arch rivals to do any of these things.  This fundamental pleading defect is incurable, because Plaintiffs' own submissions show that Discover's participation in the conspiracy they allege would make no sense.  It is undisputed that Discover was disadvantaged by the smart card practices at issue in *United States v. Visa, Inc.*, (Dkt. 285 at 1-2 & n.1), is not a defendant in the actions Plaintiffs cite over "interchange fees" and "anti-steering rules," (*id*. at 2-3; AC ¶¶ 9, 121, 133, 147-49, 254), and is not named in the recent merchant suits on chip-and-pin technology the Amended Complaint references in Paragraph 68.  Plaintiffs' drive-by allusion to these suits is telling, because they involve merchant challenges to some of the same EMV-related activities Plaintiffs address here, (AC ¶¶ 121-50), but on theories at odds with the conspiracy allegations in the Amended Complaint.  (*See infra* Part I.A.)  The viability of these claims is irrelevant here.  What matters is that the Amended Complaint cites merchant suits that contradict Plaintiffs' conspiracy claims—including and uniquely as to Discover—and Plaintiffs plead no facts to counter these allegations or otherwise render their competing claims plausible.

For these and the other reasons elaborated below, the Amended Complaint fails to state a claim that Discover engaged in "anticompetitive collusion" with competing Networks or issuers, (AC ¶¶ 123, 132), and confirms the incurable nature of this defect in highlighting the many reasons Discover would independently have adopted its challenged policies, notably:  (1) its "substantial" investment in chip technology, (AC ¶¶ 353-54); (2) its interest in deterring card fraud, (*id*. ¶¶ 64, 67); and (3) legal and market indications that adopting different policies in the U.S. would subject Discover to increased fraud costs and reduced merchant acceptance with no meaningful offsetting benefits.  (AC ¶¶ 68, 99, 111-12.)  Plaintiffs' anticipatory response that Discover "would have" obtained such benefits from offering merchants "grace periods" or other variations on the challenged policies, (*e.g.*, AC ¶¶ 120-21, 150), is wholly conclusory and squarely contradicted by the merchant suits they cite in Paragraph 68 of the Amended Complaint.  Plaintiffs' own pleadings thus suggest that Discover's adoption of the challenged policies is equally—and in fact far more— consistent with independent action than the unlawful agreement Plaintiffs assert.  This point alone

3

DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

1   compels dismissal.  *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986)

2   ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not,

3   without more, support even an inference of conspiracy."); *Twombly,* 550 U.S. at 545-46 (complaint

4   must put forth "allegations plausibly suggesting (not merely consistent with) agreement.").  Plaintiffs'

5   claims against Discover also independently fail on other elements.  (*See infra* Part II.)  Accordingly,

6   and because Plaintiffs tie their "best case" to an unlawful agreement among "all four Networks"

7   including Discover, the Amended Complaint must be dismissed with prejudice.  (Dkt. 285 at 5; AC ¶

8   150.)

9                               **RELEVANT FACTUAL ALLEGATIONS**

10                 Discover operates a network on which transactions using Discover brand payment

11   cards are processed, (AC ¶ 29), and sets the network rules governing such transactions.  (*Id.* ¶ 71.)

12   Although card transactions on the separate MasterCard and Visa Networks may involve as many as

13   five parties, Discover transactions often involve only three parties because Discover Bank typically

14   issues Discover payment cards to consumers and acts as the acquirer for merchants.  (*Id.* ¶ 58.)  This

15   suit asserts antitrust and related challenges to network rule changes that Discover independently

16   announced in November 2012, and that all networks implemented in October 2015, regarding the

17   allocation of chargeback liability for certain transactions involving EMV chip cards.

18                 The Amended Complaint alleges that before October 2015, all four networks had

19   rules that typically made card issuers liable for chargebacks arising from "card-present fraud,"

20   meaning physical use of a card to incur charges not authorized by the cardholder.  (*Id.* ¶¶ 63, 71-72.)

21   The Amended Complaint further alleges that the new rules each network implemented on October

22   15, 2015 effectively "shifted" issuer liability for such transactions to the putative merchant class by

23   assigning chargeback liability to acquiring banks who could in turn pass it to merchants where (1)

24   the card used for the unauthorized purchase contained an EMV chip and (2) the card was used after

25   October 15, 2015 at a merchant that was not EMV certified.  (*Id.* ¶¶ 73-81.)  The Amended

26   Complaint does not—because it cannot—allege that the different networks adopted identical liability

27   shifts of precisely the same scope or identical certification requirements.  Plaintiffs concede the

28

4

DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

different network rules use "different vernacular and numbering," (*id.* ¶ 73), the policies they quote have facially different scope (*e.g.*, covering counterfeit fraud only vs. counterfeit and lost-and-stolen fraud chargebacks), (*id.* ¶¶ 74-81), and the Amended Complaint omits Discover from the paragraph suggesting that this suit prompted some Defendants to offer "concessions" on their challenged policies, (*id.* ¶ 7.)

Plaintiffs nonetheless assert that Discover adopted its version of the liability shift pursuant to an unlawful agreement with competing networks, issuers, and EMVCo, a standard setting organization owned and managed by six entities, two of which Plaintiffs do not name as Defendants and do not allege to be co-conspirators.  (AC ¶¶ 2, 8-9, 73-81.)  But Plaintiffs do not plead any direct evidence of this alleged agreement.  And they concede that the EMV certifications central to the liability shift they challenge require cooperation from numerous downstream players including third party acquirers, PIN pad manufacturers, middleware providers, and merchants themselves.  (*Id.* ¶¶ 85, 90(e).)  Plaintiffs further concede that the organizations (EMVCo, the Smart Card Alliance, and the EMV Migration Forum) that allegedly "provided fertile ground for" the claimed conspiracy, (*e.g.*, *id.* ¶¶ 154, 159), are legitimate trade organizations, (*id.* ¶¶ 38, 151-152), and do not plead any facts in support of the claim that Discover used its membership or participation in any of these organization to agree on any of the practices challenged in the Amended Complaint. Plaintiffs' claim that Discover's adoption of the challenged policies was more plausibly the result of conspiracy than unilateral conduct instead centers on the following allegations:

> Without agreement on the timing and manner of implementing the Liability Shift, the Networks ***risked competition from merchants steering transactions to networks without a Liability Shift component***, an extended Liability Shift date, a break on fees, equipment or other more favorable terms.  ***But if the Networks all agreed on a Liability Shift date, they could avoid competition in this area, reap billions in chargebacks, without a loss in market share, and maintain their high interchange fees***. In a truly competitive environment, at least one of these entities would or should have broken ranks and offered merchants a break on any number of terms. But none did so.
>
> . . .
>
> ***The challenges to the anti-steering rules [discussed in ¶¶ 147-49] made it clear to the Networks that many, if not most, of their protective rules***

*might well disappear*.  *As a result*, when the Networks announced their intention to implement the Liability Shift, *the Defendants all agreed that, rather than compete, they would implement the Liability Shift on the same date in the same way* across all Networks everywhere in America.

(AC ¶¶ 9-10) (emphasis added).  The Amended Complaint spends more than 200 paragraphs attempting to elaborate these claims.  But for the reasons below, none pleads a plausible claim against Discover.

## ARGUMENT

### I. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT DISCOVER ENTERED AN ANTICOMPETITIVE AGREEMENT WITH RIVAL NETWORKS OR ISSUERS

A plausible conspiracy allegation "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556; *Kendall*, 518 F.3d at 1048.  Factual allegations couched as legal conclusions need not be accepted as true. *Twombly*, 550 U.S. at 553-56.  And allegations that "are no more consistent with an illegal agreement than with [independent] rational and competitive business strategies . . . are insufficient" to plead a conspiracy.  *In re Musical Instruments & Equipment Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 557).  Where, as here, Plaintiffs allege no direct evidence of conspiracy, "plus factors" suggesting the existence of an agreement must be shown because parallelism—and even "conscious parallelism"—"is not unlawful in itself."  *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc*., 709 F.3d 129, 139 (2d Cir. 2013) (internal quotations omitted).  Such plus factors are particularly important in this case because Plaintiffs allege that the payment card industry is highly concentrated, (AC ¶ 258), and conscious parallelism is "a common reaction of firms in a concentrated market that recognize their shared economic interests and their interdependence with respect to price and output decisions."  *Mayor*, 709 F.3d at 139-40 (quoting *Twombly*, 550 U.S. at 553); *see also In re Graphics Processing Units Antitrust Litig*., 527 F. Supp. 2d 1011, 1023 n.6 (N.D. Cal. 2007) ("*GPU*") (Alsup, J.) (observing in dismissing Sherman Act claim that defendants' "interdependent" price activity was "consistent with conscious parallelism" in the "highly concentrated market" at issue).

6

1    The Amended Complaint fails adequately to allege any such factors as to Discover,

2  and even if its conclusory assertions could be characterized as "plus factors," they "lead to an

3  equally plausible inference of mere interdependent behavior" that "fall[s] short of a tacit agreement"

4  and thus cannot sustain the Amended Complaint.  *Apex Oil*, *Co. v. DiMauro*, 822 F.2d 246, 254 (2d

5  Cir. 1987).  As noted, Plaintiffs concede that issuers like Discover Bank provided EMV chip cards to

6  their customers at "substantial cost," (AC ¶¶ 353-54), that chip technology helps deter fraud, (*id.* ¶¶

7  65, 67), and that EMV certification ran into "roadblocks" in other countries, including those (like

8  Canada), in which networks adopted different certification and liability shift dates, (*id.* ¶¶ 99, 107,

9  111-12).  These admissions alone identify plausible reasons Discover would have unilaterally

10  adopted the challenged policies.  And the litany of EMV and payment-industry allegations Plaintiffs

11  offer in response, (*id.* ¶¶ 50-203), provide no plausible factual basis for treating Discover's decision

12  as more consistent with an unlawful conspiracy.

13    Plaintiffs' lengthy recitation of EMV rollouts in various non-U.S. jurisdictions

14  irrelevant to the alleged U.S. geographic and product markets here, (*see* AC ¶¶ 231-33), does not

15  plead any facts suggesting that Discover's certification and liability provisions were more plausibly

16  the product of agreement than unilateral action.  (*Id.* ¶¶ 50-121.)  These paragraphs refer to Discover

17  only in describing network mechanics and the fact of Discover's EMV-related liability rules, (*id.* ¶¶

18  52, 58, 61-62, 71-80, 97, 116), which the Amended Complaint recognizes as distinct from those of

19  other networks, (*id.* ¶¶ 72-74).  These points, like Plaintiffs' accompanying account of EMV-related

20  public commentary, (*id.* ¶¶ 85-112), are again just as consistent with parallel adoption of the U.S.

21  liability shift date as with Plaintiffs' conclusory allegations of conspiracy.  *See, e.g.*, *Kendall*, 518

22  F.3d at 1048 ("[M]erely charging, adopting or following [policies] set by [rivals] is insufficient as a

23  matter of law to constitute a violation of Section 1.").

24    Plaintiffs thus resort to the (factually unsupported and circular) assertion that

25  Discover's participation in "Defendants' Collective Agreement to Implement Chip-and-Signature

26  Instead of the More Secure Chip-and-PIN Provides Further Support of a Collusive Agreement."  (*Id.*

27  ¶¶ 68, 121-34.)  According to Plaintiffs, all "Defendants agreed to the less secure chip-and-signature

28

7

form of verification, as opposed to the more secure chip-and-PIN, . . . because chip-and-signature transactions carry a higher interchange fee, which results in significantly more revenue to the payment card networks (particularly Visa and MasterCard)."[1]  (*Id*. ¶ 121.)  But the portions of the Amended Complaint that purport to support these assertions do not allege any facts explaining why Discover would unlawfully agree to perpetuate the "interchange" or "signature" practices Plaintiffs cite as "indicative of [Defendants'] anticompetitive collusion."  (*Id*. ¶¶ 121, 123.)

Indeed, many of the sources Plaintiffs reference in their new complaint **contradict** their claim that Discover would collude with its rivals to perpetuate the "interchange" or "signature" practices they describe.  (*See id*. ¶ 68 (citing "several lawsuits by large merchants against the card networks in recent months"); ¶ 134 (citing a letter from Senator Durbin to EMVCo); ¶¶ 135-36 (citing recent changes to liability shift rules that do not involve Discover); ¶ 140 (citing a Discover statement that the networks "initiated" the liability shift that "took effect" in 2015 to "encourage timely adoption of EMV"); ¶¶ 147-49 (describing investigations into interchange and anti-steering practices that did not involve Discover).  As detailed below, the "recent" suits (by Home Depot, Kroger, and Wal-Mart[2]) Plaintiffs cite in Paragraph 68 of the Amended Complaint address the EMV-related "interchange," "signature," and "anti-steering" practices Plaintiffs cite in support of Discover's participation in the alleged conspiracy here.  But these merchant suits do not name

---

[1]  In making this allegation, Plaintiffs do not allege that EMVCo specifications were incapable of supporting both chip-and-PIN and Chip-and-Signature.  They allege that EMV processes were biased toward signature because it was supposedly more beneficial to networks and issuers than pin.

[2]  *See* Complaint, *Wal-Mart Stores, Inc. et al. v. Visa USA, Inc*., Index No. 652530/2016 (N. Y. Sup. Ct., May 10, 2016); Complaint, *The Home Depot, Inc. et al. v. Visa, Inc. et al*., No. 1:16-cv-01947-MHC (N.D. Ga., June 13, 2016); Complaint, *The Kroger Co. v. Visa, Inc*., No. 1:16-cv-00693-MRB (S.D. Oh., June 27, 2016).  "Under the 'incorporation by reference' rule, 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.'"  *Dao v. Univ. of California et. al*., No. C–04–2257-JCS, 2004 WL 1824129, at *3 (N.D. Cal. Aug. 13, 2004) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading") (internal quotation marks and citation omitted), *overruled on other gds. by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)); *cf. Mack v. South Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986) ("on a motion to dismiss a court may properly look beyond the complaint to matters of public record"), *abrogated on other gds., Astoria Federal Sav. and Loan Ass'n v. Solimino*, 111 S.Ct. 2166 (U.S. 1991).

1  Discover as a defendant, and describe the challenged practices as adverse to Discover, thus

2  suggesting the practices are **not** ones to which Discover would plausibly (much less unlawfully)

3  agree. *See* n.1.

4          As noted, the viability of these allegations is irrelevant here.  The critical point is that

5  the Amended Complaint references recent complaints by other merchants that conflict with

6  Plaintiffs' allegations of conspiracy here—including and particularly regarding Discover—and thus

7  raise plausibility concerns fatal to Plaintiffs' case.  To take just a few examples, these suits:

- Expressly disclaim the plausibility of the "merchant steering" Plaintiffs say would have resulted in departures from the challenged policies here but for an unlawful conspiracy, (AC ¶ 150), and instead allege that for reasons unrelated to Discover, merchants could not engage in steering practices that would meaningfully benefit competing networks or issuers in the manner Plaintiffs hypothesize, (*see* Home Depot Compl. ¶¶ 70, 95-98, 159-62); (Wal-Mart Compl. ¶¶ 2-3); (Kroger Compl. ¶¶ 1-7, 72-101);

- Allege that the interchange and other fees that Plaintiffs say Discover unlawfully conspired to impose, (AC ¶¶ 121, 150), were used in the EMV context to disadvantage—not benefit—Discover, (Home Depot Compl. ¶ 115), in part by "squash[ing] [point-of-sale] competition" from "PIN networks" including Discover's PULSE affiliate, (*id*. ¶ 98, *see also id.* ¶ 34(m));

- Allege that the signature preferencing for EMV transactions that Plaintiffs accuse Discover of unlawfully agreeing to impose, (AC ¶ 121), perpetuates market practices that inhibit Discover's ability to compete against rival networks in both credit and debit transactions, (Home Depot Compl. ¶¶ 141-42; 169-71; 177-78, 184) (alleging that signature preferencing in EMV credit transactions was used to "suppress the safer, cheaper, and faster PIN Debit Card products that were being promoted by the competing PIN Debit Card networks, such as [Discover's] PULSE"); (Wal-Mart Compl. ¶¶ 2-3); (Kroger Compl. ¶¶ 1-7, 72, 79-101);

- Allege that signature preferencing and certain other technical features of the U.S. EMV rollout that Plaintiffs say Discover unlawfully agreed with rivals to impose through EMVCo were designed to circumvent provisions of the Durbin Amendment advantageous to Discover and its affiliate PULSE (Home Depot Compl. ¶¶ 173-84); (Kroger Compl. ¶¶ 1-7, 72, 79-101); and

- Allege that many of the card rules and fees Plaintiffs cite as relevant to the challenged conduct here, (AC ¶¶ 121-50), "applied only to the U.S. market" or "separately for the United States from other regions," (Home Depot. Compl. ¶ 208), thus further undermining the purported relevance of their international allegations, (AC ¶¶ 99-102, 108-113).

9

1   These assertions—all of which suggest that the conduct Plaintiffs say motivated the

2   conspiracy here was not in Discover's interest to adopt—raise fundamental plausibility concerns

3   with Plaintiffs' claims against Discover, and thus with the conspiracy allegations at the heart of their

4   Amended Complaint.  The foregoing allegations regarding Discover's PULSE affiliate alone

5   contradict Plaintiffs' claim that Discover unlawfully agreed to the liability shift here in order to

6   prevent merchants from "steer[ing] cardholders to cheaper forms of payment" such as PULSE. (*E.g.*,

7   Home Depot Compl. ¶¶ 141-42.)  On the flip side, the supposedly lucrative features of the EMV-

8   related "interchange" and "signature" practices Plaintiffs allege would make them plausible

9   candidates for unilateral adoption by entities they benefit.  Accordingly, the fees, rules, and legal

10  challenges Plaintiffs cite, (AC ¶¶ 68, 121-50), undermine the plausibility of their assertion that any

11  Network's adoption of the challenged policies—and particularly Discover's—was more likely the

12  product of conspiracy than independent "business strategy unilaterally prompted by common

13  perceptions of the market." *Twombly*, 550 U.S. at 554; *In re Citric Acid Litig.*, 191 F.3d 1090, 1102

14  (9th Cir. 1999);  *GPU*, 527 F. Supp. 2d at 1021–23.

15  The Durbin letter Plaintiffs cite is likewise hard to reconcile with Plaintiffs'

16  conspiracy allegations, including and especially the allegation that Discover conspired with

17  competitors and EMVCo to impose EMV policies that would help block chip-and-pin adoption.

18  (AC ¶ 134.)  The portion of the Durbin letter they quote fails to assert any such conspiracy, and in

19  fact undermines it in observing that "most—***but not all***—of "EMVCo's controlling networks" have

20  "fiercely advocated against PINs because of their financial stake in signature transactions."  (*Id.*)

21  The same is true of the "anti-steering rules" Plaintiffs cite as a "major plus factor" motivating the

22  conspiracy they posit.  (AC ¶¶ 147-50.)  According to Plaintiffs:

23  
> Without agreement among themselves on the timing and manner of
> implementation of the Liability Shift, the Networks risked competition
24  > from each other in the form of competing on the Liability Shift and lower
> fees to the merchant. . . . Without the protection of the above [¶¶ 147-49]
25  > anti-steering rules, the Networks knew merchants would steer away from
> their network if they alone implemented a Liability Shift. This is a major
26  > plus factor.

27  

28

1    (*Id.* ¶ 150.)  Again there are many problems with this allegation, (*see, e.g.*, *Musical Instruments*, 798

2    F.3d at 1194 (even a plausible claim of "common motive does not suggest an agreement")), most

3    notably for present purposes that it lacks any factual basis as to Discover.

4           The anti-steering allegations in Paragraph 150 are conclusory and wholly speculative

5    even as to defendants whose anti-steering rules were at issue in the proceedings the Amended

6    Complaint describes.  (AC ¶¶ 147-49.)  But regardless, the complaint and Plaintiffs' June 27

7    submission concede that these challenges did ***not*** involve Discover.  (*See* ¶¶ 147-50); (Dkt. 285 at 1-

8    2.)  Accordingly, these proceedings provide no plausible basis for Plaintiffs' claim that Discover

9    unlawfully agreed on the challenged policies here in order to protect the anti-steering rules of rival

10   networks.  (*Id.* 150.)  Indeed, the Amended Complaint suggests the opposite because it:  (i) asserts

11   that there are financial and other benefits to the challenged policies that would make them plausible

12   candidates for unilateral adoption; and (ii) pleads no facts (as distinct from speculation and legal

13   conclusions) that departing from these policies would have been rewarded with the "steering" or

14   other benefits Plaintiffs hypothesize, (AC ¶ 150), and the merchant suits they reference in Paragraph

15   68 disclaim as infeasible for reasons unrelated to Discover, (*see, e.g.*, Home Depot Compl. ¶¶ 70,

16   95-98, 159-62); (Wal-Mart Compl. ¶¶ 2-3); (Kroger Compl. ¶¶ 1-7, 72-101)).

17          For example, Plaintiffs do not plead that they or any other merchant in their putative

18   class would have "steered" specific business to a network that offered "grace periods" or other

19   "concessions" on the challenged policies here, much less allege facts showing what the volume or

20   value of such business would have been.  Further, and perhaps most critically for purposes of their

21   claims here, Plaintiffs do not allege any facts suggesting that the value of any such business would

22   likely have exceeded the value to a network of unilaterally adopting and enforcing the liability shift

23   as of the October 15, 2015 date they challenge.  Plaintiffs similarly fail to allege any facts in support

24   of their claim that Discover's participation in EMVCo, the Smart Card Alliance, or EMV Migration

25   Forum was a vehicle for unlawfully adopting the challenged policies here.  Nor could they, because

26   Discover's association activities were admittedly related to its business interests as a network and

27   issuer.  (*See* AC ¶¶ 141, 158.)  Accordingly, its "[a]ttendance at industry trade shows and events is

28

11

DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

1   presumed legitimate and is not a basis from which to infer a conspiracy."  *GPU*, 527 F. Supp. 2d at

2   1023; *Twombly*, 550 U.S. at 567 n.12; *Kendall*, 518 F.3d at 1048-49; *Eclectic Props. East LLC v.*

3   *Marcus & Millichap Co.*, 751 F.3d  990, 996 (9th Cir. 2014); *Musical Instruments*, 798 F.3d at 1196

4   ("[M]ere participation in trade-organization meetings where information is exchanged and strategies

5   are advocated does not suggest an illegal agreement."); *In re Cal. Title Ins. Antitrust Litig.*, No. C 08

6   -01341 JSW, 2009 WL 1458025, at *4-6, 8 (N.D. Cal. May 21, 2009) (dismissing Section 1 claim

7   where Plaintiffs alleged only membership in rate setting organizations, a motive to conspire, and a

8   concentrated market with significant barriers to entry).

9           In sum, the allegations and sources in the Amended Complaint undermine Plaintiffs'

10  attempt to lump all four networks into a vast conspiracy against the putative nationwide merchant

11  class here.  Neither the recent complaints by other merchants, nor the letter from Senator Durbin, nor

12  the investigations and other history Plaintiffs cite are supportive of the conspiracy theory on which

13  the Amended Complaint depends.  Instead, they expressly exclude Discover from challenges to the

14  EMV-related conduct Plaintiffs address here, and in doing so raise plausibility concerns with the

15  Amended Complaint that:  (i) Plaintiffs do not counter with sufficient factual allegations; and (ii)

16  cannot avoid by second-guessing Discover's business judgments, (AC ¶¶ 121, 150),[3] alleging that

17  association activity provided "fertile ground" for a conspiracy, (AC ¶¶ 151-164), or asserting that

18  "discovery" is necessary to expose the "internal workings" of the alleged cartel, (*id.* ¶ 146).  *See*

19  *Iqbal*, 556 U.S. at 678-79.  That is all the Amended Complaint offers.

20          This pleading failure is inexcusable because Plaintiffs were well aware of their legal

21  burden and Discover's role in the litigation and industry practices they cite before they filed their

22  Amended Complaint.  Their decision to tie their "best case" to conspiracy claims at odds with their

---

[3] Because the benefits Plaintiffs associate with departures from the challenged policies are wholly speculative, they provide no basis for concluding that Discover's adherence to the policies was the product of anything other than independent decision-making, the wisdom of which Plaintiffs are not entitled to "second-guess" under the guise of an antitrust allegation.  *See Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL 70644, at *5-6 (N.D. Cal. Jan. 9, 2012) ("[F]irms must have broad discretion to make decisions based on their judgments of what is best for them.") (internal quotation marks omitted).

1   own sources and allegations compels dismissal with prejudice.  *See Denison v. Citifinancial*

2   *Servicing, LLC*, No. C 16 -00432-WHA, 2016 WL 3443380, at *1 (Alsup, J.) ("[L]eave to amend

3   should be freely given absent undue delay, bad faith or dilatory motive, repeated failure to cure

4   deficiencies, futility of amendment, and prejudice to the opposing party.") (citing *Foman v. Davis*,

5   371 U.S. 178, 182 (1962)); *see also Or. Teamster Emp'rs Trust v. Hillsboro Garbage Disposal,*

6   *Inc*., 800 F.3d 1151, 1161 (9th Cir. 2015) (affirming dismissal with prejudice when plaintiff was

7   "given two opportunities to amend its complaint").

8   **II.    THE AMENDED COMPLAINT ALSO FAILS ADEQUATELY TO PLEAD THE
        REMAINING ELEMENTS OF ITS CLAIMS AGAINST DISCOVER**

9

10              Plaintiffs' inability to plead a plausible conspiracy case involving Discover compels

11   dismissal of the Amended Complaint for the reasons above.  Dismissal is also warranted because

12   Plaintiffs do not adequately plead the remaining elements of their claims against Discover.

13          **A.    Plaintiffs Fail Adequately to Plead Antitrust Injury or Causation**

14              "[A]ntitrust injury . . . flows from that which [allegedly] makes defendants' acts

15   unlawful"—here, collusive as opposed to independent adoption of the challenged EMV policies.

16   *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977).  Accordingly, even if

17   Plaintiffs could plausibly plead the first (conspiracy) element of their Section 1 claims (they cannot),

18   their complaint would warrant dismissal for failure to plead a sufficient causal connection between

19   the challenged conduct and their alleged injury.  *See, e.g*., *Illinois Brick Co. v. Illinois,* 431 U.S. 720

20   (1977) (federal antitrust plaintiffs may not seek damages for charges they did not pay directly, even

21   if those charges were passed on to them by direct payors or other upstream entities); *Paycom Billing*

22   *Servs., Inc. v. MasterCard Int'l, Inc*., 467 F.3d 283 (2d Cir. 2006) (affirming dismissal of merchant

23   antitrust claims against network defendants over charges that were paid by acquiring banks rather

24   than the plaintiff merchants); *In re ATM Fee Antitrust Litig*., 686 F.3d 741 (9th Cir. 2012) (following

25   *Illinois Brick* in affirming dismissal of ATM cardholder claims); *Kendall*, 518 F.3d 1042.  That is so

26   for at least three reasons.

27

28

                                                      13

1        *First*, Plaintiffs allege that at least one named plaintiff (California merchant Monsieur

2    Marcel) "does not take Discover cards."  (AC ¶ 21.)  Such Plaintiffs cannot adequately plead

3    antitrust injury against Discover, because they could not have been liable for EMV-related

4    chargebacks under Discover's challenged network rules.  *See, e.g.*, *Brunswick*, 429 U.S. at 489.

5        *Second*, Plaintiffs such as putative intervenor rue21 who allege a direct relationship

6    with Discover (and thus direct damages from Discover's challenged chargeback policy), are subject

7    to a mandatory arbitration agreement that does not permit them to pursue their claims in federal

8    court, as Discover will elaborate in a separate motion to compel arbitration of rue21's claims.

9    Accordingly, these Plaintiffs cannot properly be considered part of the putative liability or damages

10    class here.

11        *Third*, for Plaintiffs like B&R Supermarket who challenge Discover chargebacks

12    allegedly passed to them through third party acquirers like WorldPay, (*see* AC Ex. C), the Amended

13    Complaint does not plead facts adequately connecting their claimed injury to Discover, much less to

14    Discover's alleged participation in an antitrust conspiracy.  Plaintiffs' only two specific examples of

15    Discover chargeback notices—the 2016 notices to B&R Supermarket in Exhibit C to the Amended

16    Complaint—are unaccompanied by any such allegations.  Plaintiffs' assertions about how

17    "Accounting Treatment of Payment Card Network Transactions" supposedly connects EMV-related

18    liability policies to direct impact on merchants, (*id*. ¶¶ 165-179), admittedly "does not apply to the

19    majority of American Express and Discover transactions."  (*Id*. ¶ 174.)  And to the extent it purports

20    to apply to Discover chargebacks processed through third party acquirers like WorldPay, it does not

21    adequately plead the antitrust injury and causation necessary to proceed with damages claims.

22    Plaintiffs' conclusory assertion that such chargebacks "must have" been passed on to merchants

23    because acquirers like WorldPay were "required" to be EMV-ready by 2013 (AC ¶ 80), fails for two

24    reasons.  First, the Amended Complaint does not allege that Worldpay was in fact EMV-ready on the

25    chargeback dates listed in Exhibit C.  An allegation that an entity was "required" to be EMV-ready

26    by a certain date does not mean that the entity was in fact EMV-ready at that time.  Indeed, Plaintiffs

27    are a case in point.  They were "required" to be EMV certified by October 15, 2015.  Second, the

28

14

DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

1    Amended Complaint does not allege that the chargebacks in issue were attributable to Discover—

2    and specifically its participation in the alleged conspiracy—as opposed to delays involving one or

3    more of the many non-defendant acquirers, middleware providers, or merchant personnel Plaintiffs

4    admit are involved in critical aspects of the certification process.  (AC ¶¶ 85, 90(e)); *see Paycom*,

5    467 F.3d at 285; *In re ATM Fee*, 686 F.3d at 743; *Kendall,* 518 F.3d 1042.  For all of these reasons,

6    the Amended Complaint fails adequately to plead that the named plaintiffs and putative intervenors

7    suffered antitrust injury caused by Discover's purportedly collusive adoption of the challenged

8    liability policies.  *See Brunswick*, 429 U.S. at 489 (where a Section 1 plaintiff's injury flows from

9    unilateral rather than concerted action, there is no "injury of the type the antitrust laws were intended

10   to prevent" and thus no antitrust standing); *Atl. Richfield Co. v. USA Petroleum Co*., 495 U.S. 328,

11   344 (1990) (the "antitrust injury requirement ensures that a plaintiff can recover only if the loss

12   stems from a competition-*reducing* aspect of the defendant's behavior"—here, allegedly collusive,

13   as opposed to unilateral, adoption of the challenged policies) (emphasis in original).  Accordingly,

14   Plaintiffs' claims would warrant dismissal even if they pled a plausible conspiracy, which they do

15   not.  *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519,

16   534 (1983) ("Congress did not intend the antitrust laws to provide a remedy in damages for all

17   injuries that might conceivably be traced to an antitrust violation.").

18        **B.    Plaintiffs' State Law Claims Against Discover Also Warrant Dismissal**

19             Plaintiffs' state law claims in Counts 2 through 7,[4] fail first and foremost because

20   they rely on the same inadequately pled allegations discussed above, and also for several

21   independent reasons.  Plaintiffs' unjust enrichment claim against Discover likewise must be

22   dismissed, most notably because Plaintiffs fail to specify the state law that governs the claim.  *See*

23   *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb.

24   8, 2016).

25   _____

26   [4] *See* AC ¶¶ 296 (Cartwright Act Claim), 307 (Florida Antitrust Act Claim), 318 (Florida Deceptive
     and Unfair Trade Practices Act Claim), 328 (Donnelly Act Claim), 340-41 (New York Deceptive
27   Acts and Practice Claim), 347-48 (California UCL Claim), 352-353 (unjust enrichment claim).

28                                         15

1

### 1.   Plaintiffs' State Law Claims Are Inadequately Pled

Plaintiffs bring six claims under the state laws of California, New York, and Florida based on the same allegations of purported conspiracy they cite in support of their Sherman Act claim.[5]  Each of these claims must be dismissed because they rest on the same insufficient allegations discussed above.  *See* Part I *supra; Stubhub, Inc. v. Golden State Warriors, LLC*, No. C 15-1436, 2015 WL 6755594, at *4 (N.D. Cal. Nov. 5, 2015) (Cartwright Act); *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013) (UCL); *McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.*, No. 09-62033-CIV, 2011 WL 2118701, at *9 (S.D. Fla. May 27, 2011) (Florida Antitrust Act); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 233-34 (E.D.N.Y. 2009), (Donnelly Act) *aff'd*, 391 F. App'x 59 (2d Cir. 2010); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554-56 (E.D. Pa. 2007) (NYDAP); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d 1269, 1286-87 (M.D. Fla. 2002) (FDUPTA), *aff'd*, 364 F.3d 1288 (11th Cir. 2004).

### 2.   The State Law Claims Also Fail For State-Law Specific Deficiencies

Plaintiffs fall outside the scope of the state consumer-protection statutes they assert because Plaintiffs are not consumers, nor do they adequately allege harm to consumers.  In fact, the Liability Shift is meant to *protect* consumers by reducing fraud.

Plaintiffs' New York Deceptive Acts and Practices claim likewise fails because the unlawful conduct Plaintiffs allege is not consumer-oriented, which it must be to form the basis of a § 349 claim or § 350 claim.  *See Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 303-304 (E.D.N.Y. 2010) (plaintiff failed "to meet the threshold requirement of consumer orientation" in asserting § 349 claim against credit card processor, because "businesses cannot be consumers for this purpose"); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 410 (S.D.N.Y.

---

[5] California's Cartwright Act (Cal. Bus. & Prof. Code §16700), California's Unfair Competition Law "UCL" (Cal. Bus. & Prof. Code §17200, *et seq.*), New York's Donnelly Act (N.Y. Gen. Bus. Law §340, *et seq.*), New York's Deceptive Acts and Practices Act (N.Y. Gen. Bus. Law §§349-350), the Florida Antitrust Act (Fla. Stat. Ann. §542.19), and the Florida Deceptive and Unfair Trade Practices Act "FDUTPA" (Fla. Stat. Ann. §501.201, *et seq.*).

16

1  2011) ("[A]nticompetitive conduct that is not premised on consumer deception is not within the

2  ambit of the statute.") (internal quotation marks omitted).

3  Plaintiffs' allegations are also inadequate to state a California UCL claim. Plaintiffs

4  purport to bring claims under each of the UCL's three prongs—the "unlawful," "unfair," and

5  "fraudulent" prongs, (*see* AC ¶ 350)—but do not address the "[d]ifferent legal standards and

6  pleading requirements [that] apply to each prong." *Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-

7  04868 SBA, 2011 WL 4079927, at *9 (N.D. Cal. Sept. 13, 2011). Instead, Plaintiffs offer "precisely

8  the type of fact-barren, conclusory pleading that the Supreme Court has held is insufficient under

9  Rule 8." *Id.* (citing *Iqbal*, 556 U.S. at 678); *see also Coburn v. Bank of New York Mellon, N.A.*, No.

10  2:10-CV-03080 JAM, 2011 WL 1103470, at *5 (E.D. Cal. Mar. 22, 2011) ("Plaintiff's allegation

11  that Defendants' acts constitute unlawful, unfair, and fraudulent business practices is a conclusory

12  statement devoid of facts and it fails to meet heightened, or even standard, pleading requirements.").

13  Plaintiffs' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim

14  should be dismissed based on the pleading defects above, and for the additional reason that, "[b]y its

15  express terms, FDUTPA does not apply to banks or savings and loan associations regulated by

16  federal agencies," *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015) (citing Fla.

17  Stat. § 501.212(4)(c)) (internal quotation marks and alterations omitted). To the extent Plaintiffs'

18  claims against Discover encompass Discover Bank, they are precluded because Discover Bank is

19  regulated by the FDIC. *See* https://www5.fdic.gov/idasp/main.asp (Discover ID Confirmation and

20  Report Selection (Aug. 4, 2016)), last accessed August 5, 2016.[6]

21  Finally, Plaintiffs' Cartwright Act claim against Discover also fails for the

22  independent reason that the only two named Plaintiffs associated with this claim—Monsieur Marcel

23  and rue21, (AC ¶ 297)—cannot proceed with claims against Discover in this Court. *See supra* Part

24

25

26  _____

[6] For the sake of efficiency Discover incorporates by reference here the points and authorities in footnote 5 of the Bank Defendants' Memorandum, which incorporation does not cause this brief to exceed the 25-page limit.

27

28

17

1  II.A (rue21's claims are subject to mandatory arbitration); (AC ¶ 21) (Marcel does not take Discover

2  cards).

3  **3.      Plaintiffs' Unjust Enrichment Claim Also Fails**

4          The Amended Complaint does not cure the defect in Plaintiffs' prior complaint of

5  failing to identify the state law that governs their unjust enrichment claim.  This pleading defect

6  compels dismissal, because when a plaintiff brings an unjust enrichment claim on behalf of a

7  nationwide class but fails to identify the state law underlying the claim, a court "cannot assess

8  whether the claim has been adequately pled."  *In re Static Random Access Memory (SRAM) Antitrust*

9  *Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008).[7]  Further, and in any event, unjust enrichment is

10 not an independent claim in California.  *See ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life*

11 *Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *11 (N.D. Cal. Dec. 22, 2015) (Alsup, J.)

12 ("Unjust enrichment is not a cause of action or even a remedy, but rather a general principle,

13 underlying various legal doctrines and remedies.") (internal quotation marks and alteration omitted);

14 *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (Alsup, J.)

15 (remedies available for the violations alleged under the CLRA and UCL meant there would "be no

16 occasion for resort to unjust enrichment.").

17 **CONCLUSION**

18         For all the foregoing reasons, Discover respectfully requests that the Court dismiss

19 the Amended Complaint with prejudice.  *See Bailey v. Avis Budget Grp.*, No. 12-01486, 2013 WL

20 183998, at *3 (N.D. Cal. Jan. 17, 2013) (Alsup, J.).

21

22

23

24 _____
   [7] Other courts have dismissed claims in similar circumstances.  *See, e.g.*, *In re Ditropan XL Antitrust*
25 *Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007) (stating that plaintiff's "ability to plead a claim
   for unjust enrichment may vary from state to state, and unless and until [the plaintiff] clarifies under
26 what state law it is moving, neither Defendants nor the Court can address whether the claim or
   claims have been adequately plead [sic]."); *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-
27 BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *In re TFT-LCD (Flat Panel) Antitrust*
   *Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011).

28

1    Dated: August 5, 2016                          WINSTON & STRAWN LLP

2

3                                          By:   */s/ Elizabeth P. Papez*
                                                 Elizabeth P. Papez (*pro hac vice*)
4                                                WINSTON & STRAWN LLP
                                                 1700 K Street, N.W.
5                                                Washington, DC 20006
                                                 Telephone: (202) 282-5000
6                                                Facsimile: (202) 282-5100
                                                 epapez@winston.com
7
                                                 Robert Y. Sperling (*pro hac vice*)
8                                                WINSTON & STRAWN LLP
                                                 35 West Wacker Drive
9                                                Chicago, IL 60601
                                                 Telephone: (312) 558-5600
10                                               Facsimile:  (312) 558-5700
                                                 rsperling@winston.com
11
                                                 Sean D. Meenan
12                                               Jeanifer E. Parsigian
                                                 Dana Cook-Milligan
13                                               WINSTON & STRAWN LLP
                                                 101 California Street
14                                               San Francisco, CA 94111
                                                 Telephone: (415) 591-1000
15                                               Facsimile: (415) 591-1400
                                                 smeenan@winston.com
16                                               jparsigian@winston.com
                                                 dlcook@winston.com
17
                                                 Attorneys for Defendant
18                                               DISCOVER FINANCIAL SERVICES

19

20

21

22

23

24

25

26

27

28

19