EXHIBIT 1

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

DEVINE GOODMAN RASCO &
  WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL  33134
Telephone:  305/374-8200
305/374-8208 (fax)
jdevine@devinegoodman.com
lgoodman@devinegoodman.com
rkuntz@devinegoodman.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, a Florida corporation, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>          vs.<br><br>VISA, INC., a Delaware corporation, et al.,<br><br>                         Defendants. | Case No. 3:16-cv-01150-WHA<br><br>CLASS ACTION<br><br>PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS |

1141211_1

1   TO:     DEFENDANTS AND THEIR ATTORNEYS OF RECORD

2          Plaintiffs, by their counsel, pursuant to Federal Rules of Civil Procedure 26 and 34, request

3   that defendants Visa, Inc. and Visa USA, Inc. (collectively, "Visa"), MasterCard International

4   Incorporated ("MasterCard"), American Express Company ("American Express") and Discover

5   Financial Services ("Discover") (collectively, the "Networks"); Bank of America, N.A. ("BOA"),

6   Barclays Bank Delaware ("Barclays"), Capital One Financial Corporation ("Capital One"), Chase

7   Bank USA, National Association ("Chase"), Citibank (South Dakota), N.A., Citibank, N.A., PNC

8   Bank, National Association ("PNC"), USAA Savings Bank ("USAA"), U.S. Bancorp National

9   Association ("US Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, the "Issuing

10  Banks"); EMVCo, LLC ("EMVCo"); JCB Co. Ltd ("JCB"); and UnionPay ("UnionPay") produce

11  all documents in their possession, custody or control that are responsive to each of the requests

12  enumerated in Section VI, "Documents Requested," pursuant to the "Definitions" and "Instructions"

13  set forth in Sections I-II.  All documents responsive to the requests enumerated in Section VI shall

14  be produced to the undersigned counsel, or at such other location as is mutually acceptable to the

15  parties, by the time prescribed, or at such other time and place as the parties mutually agree.

16         The responding parties are required to produce all requested documents that are in their

17  actual or constructive possession, custody or control, or in the actual or constructive possession,

18  custody or control of their officers, employees, agents, representatives or attorneys.  The responding

19  parties shall produce said documents as they are kept in the usual course of business or shall

20  organize and label them to correspond with the categories in the request.

21         Plaintiffs request that such production be made in accordance with the "Definitions" and

22  "Instructions" set forth below.

23  **I.      DEFINITIONS**

24         This Section sets forth specific definitions applicable to certain words and terms used herein.

25  Unless words or terms have been given a specific definition in this Section or in a specific request,

26  each word or term shall be given its usual and customary dictionary definition, except where a word

27  or term has a specific customary and usage definition in your trade and industry.  In that case, the

28  word or term shall be interpreted in accordance with the specific customary and usage definition.

1.      "Acquiring Bank" or "Acquirer" means a member of Visa and/or MasterCard that acquires payment transactions from Merchants and acts as a liaison between the Merchant, the Issuing Bank, and the Payment-Card Network to assist in processing the payment transaction.  Visa and MasterCard Rules require that an Acquiring Bank be a party to every Merchant contract.

2.      "American Express" means American Express Company, and any of American Express Company's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

3.      "And" and "or" are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these documents that might otherwise be construed to be outside its scope.

4.      "Any" means one or more.

5.      "Barclays" means Barclays Bank Delaware , and any of Barclays Bank Delaware's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

6.      "BOA" means Bank of America, N.A. , and any of Bank of America, N.A.'s predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

7.      "Capital One" means Capital One Financial Corporation, and any of Capital One Financial Corporation's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                                    - 2 -

8.     "Certification" refers to the process wherein Merchants seek to obtain approval such that the equipment, including hardware and software, used to process or accept EMV chip cards complies with the various standards, specifications or requirements of the EMV payment system, including EMV Specifications, Brand certifications, PIN pad certifications, Acquirer certifications, Retail certifications, as well any other required certifications.

9.     "Chargeback" refers to a fraudulent, faulty or otherwise rejected consumer Credit Card or Charge Card transaction, which historically, were borne by the issuers, and only rarely by the merchants.

10.    "Chargeback Fee" refers to the actual amount charged to a Merchant for fraudulent, faulty or otherwise rejected consumer Credit Card or Charge Card transaction.

11.    "Charge Card" means a card that enables the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of the Charge Card.  Charge Cards typically do not come with a line of credit or allow the Cardholder to carry a balance.  Instead charge cards typically require payment of the full amount charged each month, for all payments made on behalf of the Cardholder by the issuer during the preceding month.  The issuer typically does not extend credit to the holder beyond the date of the monthly statement, nor does it impose interest charges on the balance due except as a penalty for late payment.  Examples of Charge Cards are the American Express Green, Gold, Platinum, and Centurion cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

12.    "Chase" means Chase Bank USA, National Association, and any of Chase Bank USA, National Association's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

13.    "Citibank (South Dakota), N.A." means Citibank (South Dakota), N.A., and any of Citibank (South Dakota), N.A.'s predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                          - 3 -

1    officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all

2    other persons acting or purporting to act on their behalf.

3            14.     "Citibank, N.A." means Citibank, N.A., and any of Citibank, N.A.'s predecessors,

4    successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines

5    (foreign and domestic), any of their present or former officers, directors, administrators, agents,

6    employees, investigators, accountants, attorneys and all other persons acting or purporting to act on

7    their behalf.

8            15.     "Class Members" mean the members of the class defined in Plaintiffs' Complaint for

9    Violations of the Sherman Antitrust Act, Violations of the Clayton Antitrust Act, California's

10   Cartwright Act and Unjust Enrichment, filed on March 8, 2016 in the Northern District of California,

11   San Francisco Division.  Dkt. No. 1, Complaint, ¶5.

12           16.     "Communication" or "communications" refers to any exchange of information by any

13   means of transmission.  The term "communication" also includes, without limitation, all inquiries,

14   discussions, conversations, correspondence, negotiations, agreements, understandings, meetings,

15   notices, requests, responses, demands, complaints or press, publicity or trade releases.

16           17.     "Concerns," "concerning," "regarding" and "relating to" mean consisting of,

17   discussing, describing, evidencing, referring to, constituting, comprising, containing, setting forth,

18   showing, disclosing, explaining, summarizing, pertaining to, memorializing, reflecting or otherwise

19   having any logical or factual connection to the subject matter of the document request.

20           18.     "Credit Card" means a card has a revolving line of credit enabling cardholders to

21   spend out of the line of credit by using the credit card.  Typically, cardholders have to pay a

22   minimum payment – but are not required to pay the full amount owed – each month, and if the

23   cardholder does not pay off the statement balance, he or she pays interest each month on the unpaid

24   balance of the expended line of credit.

25           19.     "Defendants" means Visa, Inc. and Visa USA, Inc. (collectively, "Visa"),

26   MasterCard, American Express and Discover (collectively, the "Networks"); BOA, Barclays, Capital

27   One, Chase, Citibank (South Dakota), N.A., Citibank, N.A., PNC, USAA, US Bank and Wells Fargo

28   (collectively, the "Issuing Banks"); EMVCo; JCB; and UnionPay, and any of Defendants'

predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

20.     "Discover" means Discover Financial Services, and any of Discover Financial Services's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

21.     "Document" and "documents" are used in the broadest possible sense and include all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure.  A draft or non-identical copy is a separate document within the meaning of this term.

22.     "EMVCo" means EMVCo, LLC, and any of EMVCo, LLC's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.  EMVCo refers to the Delaware limited liability company overseen by, *inter alia*, the Networks.

23.     "EMV Card" means a Credit Card or Charge Card containing an EMV Chip.  There are at least two kinds of EMV cards: (1) "chip-and-PIN" (personal identification number) cards, where the transaction is authorized by the merchant processing the chip card and the consumer entering a PIN, and (2) "chip-and-signature" cards, where merchant processes the chip and the consumer signs an electronic signature pad.

24.     "EMV Chip" means an electronic chip or micro-processor embedded onto a Credit Card or Charge Card.  EMV chips are typically dynamic, typically containing data that can be acted on, altered or updated.  An EMV chip may also be used to create unique electronic signatures on a per transaction basis.

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                                    - 5 -

25.     "EMV Standard" refers to the specifications, test procedures and compliance processes managed by EMVCo.

26.     "General Purchase Cards" refers to Credit Cards and Charge Cards.

27.     "Governmental Entity" means any governmental, administrative, or regulatory body or agency (or division, committee, or member thereof) in the United States, or any of the states that constitute it.

28.     "Issuing Bank" means a bank that issues the credit card to the customer and which carries the line of credit represented by the card.

29.     "Issuing Banks" means BOA, Barclays, Capital One, Chase, Citibank (South Dakota), N.A., Citibank, N.A., PNC, USAA, US Bank and Wells Fargo.

30.     "JCB" means JCB Co. Ltd, and any of JCB Co. Ltd's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

31.     "Liability Shift" refers to the change in the system for handling Chargebacks for card present transactions resulting from the decree of Issuing Banks and Networks that as of October 1, 2015, liability for card present Chargebacks would shift from the issuing banks to the merchants, unless the merchants could satisfy certain conditions.

32.     "MasterCard" means MasterCard International Incorporated , and any of MasterCard International Incorporated's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

33.     "Meetings" refers to the contemporaneous presence of any natural persons (including by telephone or other electronic means) for any purpose, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

34.     "Merchant" means a person or business eligible to accept a Charge Card or Credit Card for goods or services.

1   35.   "Merchant Discount Fee" means the fee or amount of money the Acquiring Bank

2   withholds for its processing services.

3   36.   "Networks" means the networks operated by Visa, Inc. and Visa USA, Inc.

4   (collectively, "Visa"), MasterCard International Incorporated ("MasterCard"), American Express

5   Company ("American Express") and Discover Financial Services ("Discover").

6   37.   "Parties" as well as a party's full or abbreviated name or a pronoun referring to a

7   party mean the party and, where applicable, its officers, directors, employees, partners, corporate

8   parent, subsidiaries or affiliates.

9   38.   "Person" or "persons" means natural persons, proprietorships, governmental agencies,

10   corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other

11   entities or agencies.

12   39.   "Plaintiffs" means B & R Supermarket, Inc., d/b/a Milam's Market, a Florida

13   corporation ("Milam's Market"), and Grove Liquors LLC, a Florida limited liability company

14   ("Grove Liquors"), individually and on behalf of all others similarly situated (collectively, the

15   "Class").

16   40.   "PNC" means PNC Bank, National Association, and any of PNC Bank, National

17   Association's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions,

18   operating units or business lines (foreign and domestic), any of their present or former officers,

19   directors, administrators, agents, employees, investigators, accountants, attorneys and all other

20   persons acting or purporting to act on their behalf.

21   41.   "Practice or Procedure" as used herein means any rule, policy, directive, program,

22   custom or course of conduct, whether formal or informal, written or unwritten, recorded or

23   unrecorded.

24   42.   "UnionPay" means UnionPay, and any of UnionPay 's predecessors, successors,

25   parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and

26   domestic), any of their present or former officers, directors, administrators, agents, employees,

27   investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

28

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                                    - 7 -

43.  "USAA" means USAA Savings Bank, and any of USAA Savings Bank's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

44.  "US Bank" means U.S. Bancorp National Association, and any of U.S. Bancorp National Association 's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

45.  "Visa, Inc." means Visa, Inc. and any of  Visa, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

46.  "Visa USA, Inc." means Visa USA, Inc. and any of Visa USA, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

47.  "Wells Fargo" means Wells Fargo Bank, N.A., and any of Wells Fargo Bank, N.A. 's predecessors, successors, parents, subsidiaries, affiliates, segments, divisions, operating units or business lines (foreign and domestic), any of their present or former officers, directors, administrators, agents, employees, investigators, accountants, attorneys and all other persons acting or purporting to act on their behalf.

48.  "You" and "your" refer to the person responding to these Requests.

## II.  INSTRUCTIONS

1.  All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile

1   thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such

2   documents are stored and retrieved.

3          2.      In responding to these Requests, you shall produce all responsive documents

4   (including those stored electronically), which are in your possession, custody or control, or in the

5   possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or

6   affiliates, or any of your respective directors, officers, managing agents, agents, employees,

7   attorneys, accountants or other representatives.  A document shall be deemed to be within your

8   control if you have the right to secure the document or a copy of the document from another person

9   having possession or custody of the document.

10          3.      Pursuant to the Federal Rules of Civil Procedure, you are to produce original

11   documents, including those stored electronically, as they are kept in the usual course of business.  If

12   the original is not in your custody, then a copy thereof, and all non-identical copies which differ

13   from the original or from the other copies produced for any reason, including, without limitation, the

14   making of notes thereon.

15          4.      To the extent that there are documents containing information relevant to these

16   Requests that are currently in electronic format, the documents are to be produced in their native

17   format.

18          5.      Privilege logs shall be promptly provided and must be sufficiently detailed and

19   informative to justify the privilege. No generalized claims of privilege or work-product protection

20   shall be permitted. With respect to each communication for which a claim of privilege or work

21   product is made, the asserting party must at the time of assertion identify:

22          (a)      all persons making or receiving the privileged or protected communication;

23          (b)      the steps taken to ensure the confidentiality of the communication, including

24   affirmation that no unauthorized persons have received the communication;

25          (c)      the date of the communication; and

26          (d)      the subject matter of the communication.

27          6.      The log should also indicate, as stated above, the location where the document was

28   found.

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA      - 9 -

7.    If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

8.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

9.    Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

10.    If a document responsive to these Requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

(a)    Whether the document is missing or lost;

(b)    Whether it has been destroyed;

(c)    Whether the document has been transferred or delivered to another person, and, if so, at whose request;

(d)    Whether the document has been otherwise disposed of; and

(e)    A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

11.    If you believe it would be unduly burdensome to respond to any individual request or request subpart, please send a letter to the undersigned counsel specifying the reasons why the request is unduly burdensome and stating all information or knowledge you have of the information or documents sought by the request, and an attempt will be made, if possible, to rephrase or limit the request or request subpart in a reply letter to lessen your burden of compliance.  Any such reply letter may be treated by the parties to whom it is addressed as a modification of the request or request subpart addressed by your letter.

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                                    - 10 -

12.      If you believe that any individual request is ambiguous in any way, you may send a letter to the undersigned counsel describing the ambiguity, and a reply letter clarifying the ambiguity will be promptly sent to you.  Any such reply letter may be treated by the parties to whom it is addressed as a modification of the request or request subpart addressed by your letter.

13.      References to specific paragraphs of plaintiffs' Complaint are denoted by "¶__" or "¶¶__."  The references are provided solely as a convenience – to assist you in understanding the relevance or the types of documents sought – and are not intended to, and do not, narrow or otherwise limit the scope of the request.

14.      A request to produce "all documents" means you must produce every non-identical document responsive to the subject matter of the request.  A request to produce "documents sufficient to" identify or describe certain facts means you may select which documents to produce in response to the request so long as you reasonably believe they include all of the information relating to the subject matter of the request that would be reflected in all of the documents responsive to the request.  In lieu of producing "documents sufficient to" identify or describe certain facts, you may produce "all documents" relating to the subject matter of the request.  In that event, you should state that you have produced "all documents" relating to the request in your written response to these requests.

15.      Provide a source list that clearly identifies who maintained the document and the location from where it was collected.

16.      If no document responsive to a request exists, or if the only documents responsive to a request are not within your possession, custody or control, please so state in your written response to the request.

## III.      PRODUCTION OF HARD COPY DOCUMENTS

1.      Format

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields:  "BEGNO", "ENDNO", "PAGES", "VOLUME" and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be

1  merged into a single record, and single documents shall not be split into multiple records) and be

2  produced in the order in which they are kept in the usual course of business.  If an original document

3  contains color to understand the meaning or content of the document, the document shall be

4  produced as single-page, **300 DPI JPG images with JPG compression and a high quality setting**

5  **as to not degrade the original image**.  Multi-page OCR text for each document should also be

6  provided.  The OCR software shall maximize text quality over process speed.  Settings such as

7  "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

8  **IV.      PRODUCTION OF ESI**

9          1.      Format

10          The parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF

11  images with the exception of spreadsheet type files, source code, audio, and video files, which shall

12  be produced in native format.  TIFFS will show any and all text and images which would be visible

13  to the reader using the native software that created the document.  For example, TIFFS of email

14  messages should include the BCC line.  PowerPoint documents shall be processed with hidden slides

15  and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes

16  on the TIFF image.  If an original document contains color, the document should be produced as

17  **single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not**

18  **degrade the original image**.  Parties are under no obligation to enhance an image beyond how it

19  was kept in the usual course of business.

20          If a document is produced in native, a single page bates stamped image slip-sheet stating the

21  document has been produced in native format will also be provided.  Each native file should be

22  named according to the Bates number it has been assigned, and should be linked directly to its

23  corresponding record in the load file using the NATIVELINK field.  To the extent that either party

24  believes that specific documents or classes of documents, not already identified within this protocol,

25  should be produced in native format, the parties agree to meet and confer in good faith.

26          2.      De-Duplication

27          Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at

28  the family level.  Attachments should not be eliminated as duplicates for purposes of production,

1    unless the parent email and all attachments are also duplicates.  Parties agree that an email that

2    includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email

3    that does not include content in the content in those fields, even if all remaining content in the email

4    is identical.  Removal of near-duplicate documents and email thread suppression are not acceptable.

5    De-duplication will be done across the entire collection (global de-duplication) and the Custodian

6    field will list each Custodian, separated by a semi-colon, who was a source of that document.

7    Should the custodian metadata field produced become outdated due to rolling productions, an

8    overlay file providing all the custodians for the affected documents will be produced prior to

9    substantial completion of the document production.

10          3.      Technology Assisted Review

11          No party shall use predictive coding or technology-assisted-review for the purpose of culling

12   the documents to be reviewed or produced without written consent of the opposing party or an order

13   from the Court.  If written consent of the opposing party or a Court Order permitting the use of

14   predictive coding or technology-assisted-review is obtained, the parties agree to negotiate a separate

15   mutually agreeable protocol for the use of such technologies.

16          4.      Metadata

17          All ESI will be produced with a delimited, database load file that contains the metadata fields

18   listed in Table 1, attached hereto.   The metadata produced should have the correct encoding to

19   enable preservation of the documents' original language.

20          5.      Embedded Objects

21          The parties agree to meet and confer over the inclusion or exclusion of embedded files from

22   the production.

23          6.      Compressed Files Types

24          Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest

25   level document or file is extracted.

26          7.      Structured Data

27          To the extent a response to discovery requires production of electronic information stored in

28   a database, the parties will discuss methods of production best providing all relevant information,

1  including but not limited to duplication of databases or limited access for the purpose of generating

2  reports.  Parties will consider whether all relevant information may be provided by querying the

3  database for discoverable information and generating a report in a reasonably usable and exportable

4  electronic file.  A document reference sheet shall be provided to describe the purpose of the database

5  and meaning of all tables and column headers produced.

6         8.     Exception Report

7       The producing party shall compile an exception report enumerating any unprocessed or

8  unprocessable documents, their file type and the file location.

9         9.     Encryption

10       To maximize the security of information in transit, any media on which documents are

11  produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or

12  password to the receiving party, under separate cover, contemporaneously with sending the

13  encrypted media.

14        10.    Redactions

15       If documents that the parties have agreed to produce in native format need to be redacted, the

16  parties will meet and confer regarding how to implement redactions while ensuring that proper

17  formatting and usability are maintained.

18  **V.     RELEVANT TIME PERIOD**

19       Except as otherwise specified, each document request concerns the time period from

20  January 1, 2011 through the present (the "Relevant Time Period").  In responding to the Requests,

21  you must produce all documents created, dated, prepared, drafted, generated, modified, sent,

22  provided, obtained, used, or received during the Relevant Time Period, or the time period otherwise

23  specified by the request, that are responsive, in whole or in part, to the subject matter of the request,

24  and all responsive documents created before or after the Relevant Time Period, or the time period

25  otherwise specified by the request, that relate, in whole or in part, to facts, transactions, events, or

26  occurrence taking place, or anticipated to take place, during the Relevant Time Period or the time

27  period otherwise specified by the request.

28

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA      - 14 -

## VI.   DOCUMENTS REQUESTED

REQUEST FOR PRODUCTION NO. 1:

All documents regarding or constituting communications between Defendants concerning the Liability Shift.

REQUEST FOR PRODUCTION NO. 2:

All documents and communications regarding the actual or potential readiness or unpreparedness of Merchants to use certified chip-card-reading point of sale ("POS") equipment by any actual or considered deadline set for the Liability Shift.

REQUEST FOR PRODUCTION NO. 3:

All documents and communications regarding the timing, implementation and execution of the Liability Shift including the selection of October 1, 2015 as the Liability Shift deadline and any considered alternative dates for or grace period from the Liability Shift deadline.

REQUEST FOR PRODUCTION NO. 4:

All documents and communications relating to the Certification of Merchants to accept EMV Chip enabled cards, including any directives, conditions or requirements concerning Certification.

REQUEST FOR PRODUCTION NO. 5:

All documents and communications relating to Credit and Charge Card Chargebacks including all documents and communication regarding the amount and costs of Chargebacks and Chargeback Fees borne by Merchants and Defendants as well as costs of Chargebacks avoided by Merchants and Defendants.  This includes data sufficient to show the merchant, merchant address, date and time of Chargeback, and amount of Chargeback for any Chargeback incurred after October 1, 2015.

REQUEST FOR PRODUCTION NO. 6:

All documents and communications relating to information sought by any Governmental Entity regarding the competitive and consumer protection impact from the Liability Shift, chip cards and EMVCo specifications, including any information sought by U.S. Senator Dick Durbin from

1141211_1

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA                                    - 15 -

1  EMVCo pursuant to the March 17, 2016 letter to Mike Matan, Chairman, EMVCo's Executive

2  Committee.[1]

3  REQUEST FOR PRODUCTION NO. 7:

4       All documents or communications related to any Meeting conducted by Defendants in which

5  the "Liability Shift" or Certification was discussed, including all documents or communications

6  reflecting the identity of the attendees at any such Meetings, the agenda for such Meetings, the

7  materials distributed at such Meetings, and the minutes, transcripts or recordings of such Meetings.

8  REQUEST FOR PRODUCTION NO. 8:

9       All documents or communications from or to any Governmental Entity, trade group, Class

10  Member or other merchant containing or regarding any complaint, warning, or concern, that

11  Merchants may, could or would not be ready with certified chip-card-reading point of sale ("POS")

12  equipment in time for the Liability Shift.

13  REQUEST FOR PRODUCTION NO. 9:

14       All internal and external reports, testing, analyses or forecasts assessing, analyzing,

15  predicting or estimating the number, amount and value of Chargebacks that could or would be

16  imposed upon Merchants as a result of the Liability Shift, including during the Fourth Quarter of

17  2015, First Quarter of 2016 and Second Quarter of 2016.

18  REQUEST FOR PRODUCTION NO. 10:

19       All documents and communications relating to Your decision to participate with EMVCo or

20  other standard-setting organization focusing on EMV.

21

22

23

24

25

26  [1]  *See* Press Release, Dick Durbin United States Senator, Illinois, *Durbin Questions Whether*
27  *Credit/Debit Card Technology Rollout is Adequately Protecting Competition & Consumers* (Mar.
17, 2016), http://www.durbin.senate.gov/newsroom/press-releases/durbin-questions-whether-credit-
28  /-debit-card-chip-technology-rollout-is-adequately-protecting-competition-and-consumers.

REQUEST FOR PRODUCTION NO. 11:

All documents and communications relating to any meeting a Defendant (other than EMVCo) has had with EMVCo.

DATED:  April 26, 2016

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI


s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARMEN ZOHRABIAN
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDI D. BANDMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

DEVINE GOODMAN RASCO &
  WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL  33134
Telephone:  305/374-8200
305/374-8208 (fax)

Attorneys for Plaintiffs

PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO ALL DEFENDANTS - 3:16-cv-01150-WHA

- 17 -

**TABLE 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Bates number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Bates number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Bates number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Bates number associated with the last page of the last attachment. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM or HH:MM:SS or H:mm:ss tt | The time the email was sent.  This field may be combined with the SENTDATE field. |
| RECEIVEDDATE | MM/DD/YYYY | The date the email was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created.  This field may be combined with the CREATEDATE field. |
| RECEIVEDTIME | HH:MM or HH:MM:SS or H:mm:ss tt | The time the email was received.  This field may be combined with the RECEIVEDDATE field. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM or HH:MM:SS or H:mm:ss tt | The time the document was last modified.  This field may be combined with the LASTMODDATE field. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM or HH:MM:SS or H:mm:ss tt | Start time of calendar entry.  This field may be combined with the MEETING START DATE field. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM or HH:MM:SS or H:mm:ss tt | End time of calendar entry.  This field may be combined with the MEETING END DATE field. |
| FILEPATH | e.g. /JSmithPC/Users/JSmith/My Documents/ | The file path for the location where the item was stored in the usual course of business. This field should be populated for both e-mail and e-files. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document, to the extent available in extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN | Smith, Joe | The custodian from which the document originated. |
| ALL CUSTODIANS | Smith, Joe: Doe, Jane | All of the custodians from whom the producing party agreed to produce documents and from which the document originated, including such custodians who originated the document but where the document was de-duplicated in processing, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of the document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5 HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production, and metadata should be provided for only one of the MD5 Hash or SHA-1 Hash fields. |
| SHA-1 HASH | | The SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production, and metadata should be provided for only one of the MD5 Hash or SHA-1 Hash fields. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| CONFIDENTIALITY | Confidential, Highly Confidential | The confidentiality designation for the document, if any.  This field may be left blank if the producing party includes confidentiality designations on the face of the documents. |
| REDACTED | YES, NO | If a document contains a redaction, this field will display 'YES'. |
| TIMEZONE PROCESSED | PST, CST, EST, GMT, etc. | The time zone the document was processed in. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| TEXTLINK | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided where appropriate, consistent with the terms of the ESI stipulation. |

<u>DECLARATION OF SERVICE VIA ELECTRONIC MAIL AND U.S. MAIL</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      On April 26, 2016, declarant served PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS on the parties in the *B & R Supermarket, Inc. v. Visa, Inc.*, No. 3:16-cv-01150-WHA action via the e-mail distribution list CCNonECFFilings@rgrdlaw.com.

3.      Also, on April 26, 2016, declarant served PLAINTIFFS' REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed below:

| | |
|---|---|
| JCB Co. LTD<br>HQ:<br>5-1-22, Minami Aoyama, Minato-ku<br>Tokyo 107-8686<br>Japan | UnionPay<br>HQ:<br>6F,CUP Mansion<br>No. 36 Hanxiao Road<br>Pudong New District<br>Shanghai, 200135<br>China |

4.      That there is a regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 26, 2016, at San Diego, California.

s/ Shonda L. Landry
SHONDA L. LANDRY

1141211_1