# CRAVATH, SWAINE & MOORE LLP

| | | | | |
|---|---|---|---|---|
| JOHN W. WHITE | ROBERT I. TOWNSEND, III | WORLDWIDE PLAZA | JOEL F. HEROLD | J. LEONARD TETI, II |
| EVAN R. CHESLER | WILLIAM J. WHELAN, III | 825 EIGHTH AVENUE | ERIC W. HILFERS | D. SCOTT BENNETT |
| KRIS F. HEINZELMAN | PHILIP J. BOECKMAN | NEW YORK, NY 10019-7475 | GEORGE F. SCHOEN | TING S. CHEN |
| PHILIP A. GELSTON | ROGER G. BROOKS | | ERIK R. TAVZEL | CHRISTOPHER K. FARGO |
| RICHARD W. CLARY | WILLIAM V. FOGG | TELEPHONE: +1-212-474-1000 | CRAIG F. ARCELLA | KENNETH C. HALCOM |
| JAMES D. COOPER | FAIZA J. SAEED | FACSIMILE: +1-212-474-3700 | TEENA-ANN V. SANKOORIKAL | DAVID M. STUART |
| STEPHEN L. GORDON | RICHARD J. STARK | | ANDREW R. THOMPSON | JONATHAN L. DAVIS |
| DANIEL L. MOSLEY | THOMAS E. DUNN | | DAMIEN R. ZOUBEK | AARON M. GRUBER |
| ROBERT H. BARON | MARK I. GREENE | | LAUREN ANGELILLI | O. KEITH HALLAM, III |
| C. ALLEN PARKER | DAVID R. MARRIOTT | | TATIANA LAPUSHCHIK | OMID H. NASAB |
| SUSAN WEBSTER | MICHAEL A. PASKIN | CITYPOINT | ERIC L. SCHIELE | DAMARIS HERNÁNDEZ |
| DAVID MERCADO | ANDREW J. PITTS | ONE ROPEMAKER STREET | ALYSSA K. CAPLES | JONATHAN J. KATZ |
| ROWAN D. WILSON | MICHAEL T. REYNOLDS | LONDON EC2Y 9HR | JENNIFER S. CONWAY | |
| CHRISTINE A. VARNEY | ANTONY L. RYAN | TELEPHONE: +44-20-7453-1000 | MINH VAN NGO | ———————— |
| PETER T. BARBUR | GEORGE E. ZOBITZ | FACSIMILE: +44-20-7860-1150 | KEVIN J. ORSINI | |
| SANDRA C. GOLDSTEIN | GEORGE A. STEPHANAKIS | | MATTHEW MORREALE | |
| THOMAS G. RAFFERTY | DARIN P. MCATEE | WRITER'S DIRECT DIAL NUMBER | JOHN D. BURETTA | SPECIAL COUNSEL |
| MICHAEL S. GOLDMAN | GARY A. BORNSTEIN | +1-212-474-1348 | J. WESLEY EARNHARDT | SAMUEL C. BUTLER |
| RICHARD HALL | TIMOTHY G. CAMERON | | YONATAN EVEN | GEORGE J. GILLESPIE, III |
| JULIE A. NORTH | KARIN A. DEMASI | WRITER'S EMAIL ADDRESS | BENJAMIN GRUENSTEIN | |
| ANDREW W. NEEDHAM | LIZABETHANN R. EISEN | rwilson@cravath.com | JOSEPH D. ZAVAGLIA | ———————— |
| STEPHEN L. BURNS | DAVID S. FINKELSTEIN | | STEPHEN M. KESSING | |
| KEITH R. HUMMEL | DAVID GREENWALD | | LAUREN A. MOSKOWITZ | |
| DAVID J. KAPPOS | RACHEL G. SKAISTIS | | DAVID J. PERKINS | OF COUNSEL |
| DANIEL SLIFKIN | PAUL H. ZUMBRO | | JOHNNY G. SKUMPIJA | MICHAEL L. SCHLER |

November 28, 2016

B & R Supermarket, Inc., et al v. Visa, Inc., et al,
No. 3:16-cv-01150-WHA (N.D. Cal.)

Dear Judge Alsup:

In accordance with this Court's Order Setting Hearing re Plaintiffs' Discovery Disputes, ECF 366, November 23, 2016, American Express Company ("American Express") writes to provide its response to Plaintiffs' letters dated November 8, 2016 and November 18, 2016.  See Pls.' Disc. Letter Br., Nov. 8, 2016, ECF No. 357; Pls' Disc. Letter Br., Nov. 18, 2016, ECF No. 360.

I.      Plaintiffs' Data Requests

Plaintiffs' November 8, 2016, letter seeks to compel American Express to produce itemized chargeback data for every chargeback made by American Express to every one of American Express's 6.5 million merchants since October 1, 2012—whether related to EMV fraud liability or not.   Then, for each of these millions of chargebacks, Plaintiffs want American Express to provide the merchant's name, merchant's address, unique identifier for the merchant, merchant's tax ID, date, time, amount of the chargeback, any fees associated with the chargeback, type of card used, issuing bank, acquiring bank and any codes to identify the nature and type of the chargeback.  See Pls.' Disc. Letter Br. Ex. 2 at 15, Nov. 8, 2016, ECF No. 357-2.[1]  Plaintiffs also seek weekly payment card volume for every American Express merchant from October 1, 2012 to the

---

[1] Plaintiffs' Request No. 5, which sought this same data from October 1, 2015, to the present, is subsumed within the later-served Requests Nos. 12 and 13.  Plaintiffs reiterated this request in Request No. 32 in Plaintiffs' Third Set of Requests for Production of Documents, which expands the definition of Chargebacks to include Chargebacks on "Credit Card, Charge Card or Debit Card transaction[s]".  See Exhibit 1 at 15.

present, including the merchant's name, merchant's address, unique identifier and the merchant's tax ID.  See id.

Despite our repeated requests that plaintiffs identify the potential relevance of that data, plaintiffs have failed to do so, beyond saying that:  (1) they need the data to build a class certification model to demonstrate Rule 23 ascertainability, see Pls.' Disc. Letter Br., Nov. 8, 2016, ECF No. 357; and (2) regression analysis is an accepted method for analyzing data, see Pls' Disc. Letter Br., Nov. 18, 2016, ECF No. 360.  Plaintiffs' mention of regression analysis is a complete non sequitur that has nothing to do with the potential relevance of the data requested.

As to ascertainability (and class certification more generally), there are no claims in this litigation by American Express merchants against American Express— those have been transferred to the Southern District of New York pursuant to a valid forum selection clause.  See Order Granting Mot. to Transfer, June 24, 2016, ECF No. 282; see also Order Granting Unopposed Mot. to Transfer Venue, November 9, 2016, ECF No. 358.  The only claims in this litigation against American Express are brought by Fine Fair, as a representative of a putative (sub)class of merchants that do not accept American Express cards (and hence are not subject to the contractual forum selection provision).  American Express, obviously, has no data about merchants who do not accept its cards.

The data that American Express does have will have no bearing on the ascertainability of the class sought to be certified against Visa, MasterCard and Discover.  If those networks produce data from which the plaintiffs can demonstrate ascertainability, no data possessed by American Express would change that result.  If the data produced by those networks fails to demonstrate ascertainability, no data American Express possesses would change that result either.

Although plaintiffs focus on class certification in describing their need for the data, we address the question of whether the data might, down the road, be relevant for some other purpose.  Of course, if plaintiffs fail to obtain class certification, none of the requested data would be relevant, except data about the three named plaintiffs (who presumably already possess their own chargeback and transaction volume data).  But even if classes are certified, the data sought from American Express would not merely be premature (because it assumes a grant of class certification), but would be far more burdensome that what would be required for proof of damages.

Again, the putative class suing American Express, even if certified, could not recover damages based on anything having to do with American Express's chargebacks, because that putative class never accepted American Express cards.  The damages suffered by each of those merchants, if any, would be based on their chargebacks from Visa, MasterCard and/or Discover; American Express has no data concerning those chargebacks.

Merchants who accept American Express cards, if a class is certified, would seek damages in this litigation from Visa, MasterCard and Discover only, based on their EMV-related fraud liability chargebacks from all four networks (including

American Express). However, for that purpose, it would be sufficient to know the total dollar volume of American Express's EMV-related fraud liability chargebacks after October 1, 2015, because damages could be allocated on the basis of data produced by the other networks. American Express is producing monthly reports showing the dollar volume of those chargebacks. Moreover, even if the plaintiffs wished to use American Express's merchant-by-merchant EMV-related chargeback data as part of the process of allocating damages to each class member, the data now sought by plaintiffs is grossly more than what would be required for that purpose: the data between October 1, 2012, and September 30, 2015, would be irrelevant (because no EMV-related chargebacks occurred during that time); the data concerning chargebacks made for reasons other than EMV certification would be irrelevant[2]; and the transaction-by-transaction data would also be irrelevant—all that would even arguably be relevant for allocation of damages would be the total EMV-related fraud chargebacks by merchant.

        To attempt to resolve the dispute, American Express offered to produce (1) aggregate data sufficient to show the total amount of its EMV fraud chargebacks since October 2015 and (2) a list of all merchants who have incurred at least one EMV fraud chargeback, see Exhibit 2 at 8, even though such data would not even be potentially relevant unless the Court certifies a class against Visa, MasterCard and/or Discover. (Again, the merchants to whom American Express has issued chargebacks cannot recover anything from American Express in this litigation; those whose claims against American Express remain in this litigation are merchants about whom American Express has no data.)

        Even if a much more limited data request from American Express could be relevant, at some later date, to claims plaintiffs have against other Networks, American Express should not now be put to the burden of producing tens of millions of transactions (every chargeback made to any of American Express's 6.5 million merchants, whether EMV-related, fraud-related or neither, from October 2012 to the present). The data resides in several distinct databases, and would require a significant amount of effort to reconcile and produce. American Express should not be compelled to produce the data that Plaintiffs have requested. Information must be relevant in order to be discoverable. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). Plaintiffs have not—and cannot—show that the data they have requested from American Express is relevant and discoverable.

---

[2] American Express issues chargebacks for various reasons. See Def. American Express Company's Mot. to Compel Arbitration Ex. H at 144-65, Apr. 18, 2016, ECF No. 229-10. Many chargebacks are unrelated to fraud. If, for example, the cardholder is dissatisfied with the goods or services, American Express may issue a chargeback. See id. at 152. Other chargebacks are related to fraud. Id. § 11.4.3. If, for example, the merchant fails to obtain a cardmember's authorization for a transaction, American Express might issue a chargeback. Id. at 156. But, of the many reasons American Express has for issuing chargebacks, only two are related to EMV migration in the United States. Id. at 150.

Plaintiffs' suggestion that American Express has been uncooperative in discovery is flatly untrue. Consistent with this Court's instructions at the April 21, 2016, Case Management Conference, see Hr'g Tr. 40:20-25, April 21, 2016, ECF No. 252, American Express began its document production three weeks after the Court ruled on the motion to dismiss. To date, American Express has provided more discovery than any other party in this litigation, in terms of number of productions, number of documents produced and number of pages produced. Plaintiffs, meanwhile, have produced nothing. We are working hard to hew to the Court's scheduling order; the production of tens of millions of irrelevant data items will merely bog down this case.

II.     Plaintiffs' 30(b)(6) Notice

The issue raised in plaintiffs' November 18, 2016, letter—a 30(b)(6) deposition of American Express on Topic 9—will be resolved by resolution of the dispute concerning the production of transaction-level data.

After plaintiffs served their initial 30(b)(6) notice, we discussed the scope of the notice with plaintiffs' counsel. See Exhibit 3. We advised plaintiffs that American Express was working to identify a witness or witnesses, and we would offer possible dates once the witness(es) was determined. Plaintiffs were satisfied until the disagreement over plaintiffs' data requests came to a head. When discussing plaintiffs' data requests on November 1, 2016, plaintiffs demanded that American Express move forward with a deposition on Topic 9 before Thanksgiving. Pls.' Disc. Letter Br. Ex. 7 at 5, November 8, 2016, ECF No. 357-7. When plaintiffs raised the data issue with the Court on November 8, 2016, we informed plaintiffs' counsel that American Express would not agree to move forward with a 30(b)(6) deposition on Topic 9 until the scope of the data production issue was resolved, because resolution of the data issue would affect the scope of the 30(b)(6) deposition and the preparation of the corporate representative. Alternatively, we offered to proceed with a deposition on Topic 9 if plaintiffs withdrew their letter to the Court and limited the scope of Topic 9 so that it excluded transaction-level fraud data. See Exhibit 4 at 2. Plaintiffs declined. See Exhibit 4 at 1.

Topic 9 covers "[t]he identity and description of your electronic databases, computer operating systems, record-keeping and record maintenance storing or containing documents responsive to Plaintiffs' Requests for Production", see Pls' Disc. Letter Br. Ex. 1 at 16, Nov. 18, 2016, ECF No. 360-1. Once the scope of the data obtainable by plaintiffs in response to their Requests for Production is resolved, we will know the scope of the deposition on Topic 9. Thus, no separate resolution of this issue is

required: the 30(b)(6) witness will be prepared to answer questions depending on the Court's determination of the scope of the responsive documents.

Respectfully,

/s/ Rowan D. Wilson

Rowan D. Wilson
Damaris Hernández


The Honorable William H. Alsup
   United States District Court
      Northern District of California
         450 Golden Gate Avenue
            Box 36060
               San Francisco, CA 94102-3489

VIA ECF