UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B & R SUPERMARKET, INC., ET AL.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>VISA, INC., et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-01150-WHA (MEJ)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 375, 376 |

## INTRODUCTION

Plaintiffs B & R Supermarket, Inc. ("B & R Supermarket")[1]; Grove Liquors LLC ("Grove Liquors"); Strouk Group LLC dba Monsieur Marcel ("Monsieur Marcel"); and Palero Food Corp. and Cagueyes Food Group, together dba Fine Fare Supermarket ("Fine Fare") (collectively, "Plaintiffs") ("Plaintiffs"), and Defendant American Express, Inc. ("American Express") have filed two letter briefs asking the undersigned to resolve their discovery disputes.[2] In one Letter, the parties dispute when American Express must produce a Rule 30(b)(6) witness regarding Topic 9 of Plaintiffs' notice of deposition. Dep. Ltr., Dkt. No. 375. In another Letter, the parties dispute whether American Express must produce documents concerning chargebacks[3] and processing.

---

[1] Though not noted in their letters, Plaintiffs state in other pleadings that B & R Supermarket does business as Milam's Market. *See, e.g.*, Am. Compl. at 1, Dkt. No. 291.

[2] Visa, Inc.; Visa USA, Inc.; Mastercard International Inc.; and Discover Financial Services are also named as Defendants in this action. They are not parties to the disputes raised in these two Letters.

[3] A "chargeback" is "a fraudulent, faulty or otherwise rejected consumer Credit Card or Charge Card transaction, which historically, were borne by the issuers, and only rarely by the merchants." First RFP ¶ 9; Second RFP ¶ 8. A "'Chargeback Fee' refers to the actual amount charged to a Merchant for fraudulent, faulty or otherwise rejected consumer Credit Card or Charge Card transaction." First RFP ¶ 10; Second RFP ¶ 9.

RFP Ltr., Dkt. No. 376. The Court ordered supplemental briefing regarding the proportionality of Plaintiffs' requests (Dkt. No. 377), and the parties timely responded (*see* Suppl. Dep. Ltr., Dkt. No. 380; Suppl. RFP Ltr., Dkt. No. 381). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND[4]

In short, this is a putative class action in which Plaintiffs allege certain payment card networks conspired to shift liability for fraudulent card transactions from issuing banks to merchants until a merchant obtained certification to accept chip-enabled EVM cards (the "Liability Shift"). Plaintiffs assert claims under the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 3, and various state antitrust and deceptive practices laws. Am. Compl. ¶¶ 285-361, Dkt. No. 291. They seek to represent a class of "merchants who have been unlawfully subjected to the so-called Liability Shift for the assessment of MasterCard, Visa, Discover and/or American Express credit and charge card chargebacks, from October 2015 until the anticompetitive conduct ceases[.]" *Id.* ¶ 238. Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(2) and (b)(3). *See id.*

Certain American Express Card Acceptance Agreements contain a forum selection clause. *See* First Transfer Order at 2-3, Dkt. No. 282. Based on this forum selection clause, Judge Alsup severed and transferred B & R Supermarket and Grove Liquors' claims against American Express to the Southern District of New York on June 24, 2016. First Transfer Order at 3-4; *see also* Am. Compl. ¶ 28 ("Named Plaintiff Milam's Market's claim against American Express has been transferred to the Southern District of New York by virtue of Dkt. No. 282."). On November 9, 2016, Judge Alsup also severed and transferred Monsieur Marcel's claims against American Express to the Southern District of New York. Second Transfer Order, Dkt. No. 358. Fine Fare remains the only Plaintiff with claims pending against American Express in this lawsuit. *See* RFP Ltr. at 1; Dep. Ltr. at 1. Fine Fare neither accepts American Express cards nor has a contract with

---

[4] A detailed factual background can be found in the Order Regarding Motions to Dismiss, Intervene, and Compel Arbitration issued by Honorable William Alsup, the presiding judge in this matter. Order, Dkt. No. 346 at 2-8.

American Express for card-acceptance services. *Id.* (both); Am. Compl. ¶ 23.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). There is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

**DISCUSSION**

**A. B & R Supermarket, Grove Liquors, and Monsieur Marcel**

As noted above, Judge Alsup severed and transferred B & R Supermarket, Grove Liquors,

3

and Monsieur Marcel's (the "American Express Merchants") claims against American Express to the Southern District of New York. *See* First Transfer Order; Second Transfer Order. Plaintiffs argue the requested discovery "is important to resolve issues related to Rule 23 ascertainability and class certification " but American Express contends the "severance and transfer of the claims of American Express merchants . . . renders Plaintiffs' claim untenable." Suppl. RFP Ltr. at 4; *see* RFP Ltr. at 5. Plaintiffs contend this contention is "untrue." Suppl. RFP Ltr. at 3; *see* RFP Ltr. at 3. Plaintiffs emphasize that American Express remains a Defendant in this action and argue, without explanation, that it is jointly and severally liable under the antitrust laws. *Id.* (both).

The undersigned agrees with American Express that this is not the proper court to resolve these disputes as they relate to the American Express Merchants. Plaintiffs' unsupported contention that "it is not the case that any and all disputes must be determined by the New York Court" is not persuasive. *See* Suppl. RFP Ltr. at 3. Judge Alsup's Orders severing and transferring the American Express Merchants' claims do not indicate that the Court retained jurisdiction over discovery matters, and Plaintiffs offer no arguments as to why the undersigned should consider their disputes when these Plaintiffs' claims are no longer pending in this Court. Moreover, even if, as Plaintiffs argue, the requested discovery is relevant to class certification, the American Express Merchants will be seeking class certification before the New York court, not here.

The undersigned therefore declines to resolve these disputes as they relate to the American Express Merchants.[5] These Plaintiffs may be entitled to the requested discovery, or some portion thereof, as it may indeed be relevant to their claims and proportional to the needs of the case. But the Southern District of New York, as the court presiding over these Plaintiffs' claims, is the proper court to determine what discovery the American Express Merchants may obtain from American Express.[6]

---

[5] At least, the Court declines to resolve the dispute as it pertains to B & R Supermarket, Grove Liquors, and Monsieur Marcel through a joint letter. The Court makes no determination as to whether B & R Supermarket, Grove Liquors, and Monsieur Marcel may seek the requested discovery through another mechanism.

[6] A review of the New York action's case docket shows that the American Express Merchants

4

1  Fine Fare, however, has claims pending against American Express in the instant matter and
2  is not subject to the New York court's jurisdiction. Accordingly, this undersigned considers
3  whether Fine Fare is entitled to the requested discovery.

**B.   RFP Letter**

Because the topic of Plaintiffs' deposition notice concerns documents responsive to Plaintiffs' requests for production ("RFPs"), the Court first addresses the parties' RFP Letter before turning to their Deposition Letter. This dispute concerns three RFPs that Plaintiffs served on American Express:

> REQUEST FOR PRODUCTION NO. 5:
>
> All documents and communications relating to Credit and Charge Card Chargebacks including all documents and communication regarding the amount and costs of Chargebacks and Chargeback Fees borne by Merchants and Defendants as well as costs of Chargebacks avoided by Merchants and Defendants. This includes data sufficient to show the merchant, merchant address, date and time of Chargeback, and amount of Chargeback for any Chargeback incurred after October 1, 2015.
>
> REQUEST FOR PRODUCTION NO. 12:
>
> Transaction-level data reflecting each Chargeback incurred from October 1, 2012 to the present. This information includes data sufficient to show the Merchant's name, address, unique identifier (if applicable), tax ID, date and time of Chargeback, the amount of any Chargeback, any fees assessed in conjunction with the Chargeback, the type of card used, the Issuing Bank of the card, the Acquiring Bank who acquired the Merchant's transactions, and any codes that identify the type and nature of the Chargeback.
>
> REQUEST FOR PRODUCTION NO. 13:
>
> Weekly data regarding payment card volume by Merchant from October 1, 2012 to the present. This information includes data sufficient to show the Merchant's name, address, unique identifier (if applicable) and tax ID.

Plaintiffs' Revised First Set of Requests for Production of Documents ("First RFP") at 15, Dkt. Nos. 376-1 & 381-1; Plaintiffs' Second Set of Requests for Production of Documents ("Second RFP") at 15, Dkt. Nos. 376-2 & 381-2.

---

have not raised this dispute before the New York court.

5

Plaintiffs contend this discovery is "extremely important to Plaintiffs' required class certification model" and "is available from no other source." Suppl. RFP Ltr. at 3. Plaintiffs argue they "are entitled to demonstrate they can determine damages caused by the joint and several actors on a classwide basis, and . . . to determine the quantum of those damages." RFP Ltr. at 3; Suppl. RFP Ltr. at 3. "Without the data, Plaintiffs will be open to attacks from American Express (and other defendants) regarding the explanatory power of any model presented should the data from American Express not be included." Suppl. RFP Ltr. at 3. As a compromise, Plaintiffs propose limiting their requests to (1) "[m]erchant location transaction level chargebacks imposed after the Liability Shift for Liability Shift codes F30 and F31",[7] (2) "[w]eekly merchant location level total chargebacks both before and after the Liability Shift", and (3) "[t]otal processing volume by merchant location by month from January 1, 2012 to present." *Id.* at 2, 4; RFP Ltr. at 2, 4.

American Express argues Plaintiffs' RFPs place an "enormous" burden on it. Suppl. RFP Ltr. at 5. It explains that Plaintiffs' requests "encompass[] tens of millions of transactions and weekly data for each of the more than 6 million merchants that accept American Express" that "is

---

[7] In its October 2015 Merchant Regulations – U.S., American Express added two new "reason codes" to implement the Liability Shift: "EMV Counterfeit (F30)" and "EMV Lost/Stolen/Non Received (F31)." Am. Compl. ¶ 81. Plaintiffs provide the following descriptions of these codes:

> <u>EMV Counterfeit (F30)</u>
> The Cardmember denies participation in the Charge and a counterfeit Chip Card was used at a POS System where the Transaction was not processed as a Chip Transaction because either the POS System was not an Enabled Chip and PIN POS System or the Transaction was manually keyed.
> **Note:** Not applicable to contactless Transactions and Digital Wallet Payments.
>
> <u>EVM Lost / Stolen / Non Received (F31)</u>
> The Cardmember denies participation in the Charge and Chip Card with PIN capabilities was lost/stolen/non-received and was used at a POS System where the Transaction was not processed as a Chip Card Transaction with PIN validation because either the POS System is not an Enabled Chip and PIN POS System, or, the Transaction was manually keyed.
> **Note:** Not applicable to contactless Transactions and Digital Wallet Payments, the Charges that qualify under the No Signature/No PIN Program. (See section 4.18, "no signature/no pin program").

*Id.*

scattered over at least 6 databases at American Express." *Id.* It would take thousands of hours to collect this data, some of which can only be gathered manually and which resides with the proprietary issuer, not American Express. *Id.* American Express contends a more limited production may be appropriate if Plaintiffs obtain class certification and face an issue of damages. *Id.* at 5-6. It therefore proposes to produce (1) aggregate data sufficient to show the total amount of its EMV fraud chargebacks since October 2015; and (2) if a class is certified, a list of all merchants who have incurred at least one EMV fraud chargeback. *Id.* at 6.

The Court finds that the requested discovery is relevant to class certification and thus is not premature. The Ninth Circuit has noted "the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Courts may consider damages when evaluating commonality and predominance to determine whether class certification is appropriate. *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *4-7 (N.D. Cal. Feb. 8, 2016) (considering expert analysis offered to show class-wide injury to satisfy predominance requirement under Rule 23(b)(3)); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *8-10 (N.D. Cal. June 5, 2006) (finding predominance requirement satisfied where plaintiffs identified a valid methodology for determining impact on a class-wide basis).

But a damages "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). In *Comcast*, the Supreme Court rejected the notion that "*any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id.* (emphasis in original). "Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.* Rather, "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Id.* (internal quotation marks omitted). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule

7

23(b)(3)." *Id.*

Plaintiffs allege that with the implementation of credit cards with EMV chips, merchants not only have to purchase new EMV-capable terminals or chip card readers, but they also have to have that equipment certified before it could be used. *See* Am. Compl. ¶ 82. Plaintiffs further allege that because Defendants have caused significant delays in certifying EMV terminals, merchants cannot process EMV chip cards even with the proper equipment. *See id.* ¶¶ 3, 85-90. In short, "[Defendants] mandated the switch to EMV cards and control when – if ever – a merchant's system will be 'certified' to accept them, while [Defendants] . . . profit by millions of dollars each month certification is delayed." *Id.* ¶ 84.

Fine Fare may discover information related to American Express' chargebacks. Under Plaintiffs' theory, American Express is jointly and severally liable for Fine Fare's damages. *See* Suppl. RFP Ltr. at 3 (arguing "American Express is a defendant in this Court and is jointly and severally liable under the antitrust laws."). Even if Fine Fare is not an American Express merchant, Fine Fare alleges it was nonetheless harmed by a conspiracy in which American Express took part. *See* Am. Compl. ¶ 24 ("Since October 2015, Fine Fare has suffered significant and unprecedented chargebacks directly traceable to the Liability Shift. [ ]Since the Liability Shift, . . . Fine Fare has seen a steady increase in chargebacks."). Data on post-Liability Shift chargebacks could help Fine Fare establish that American Express conspired with other Defendants that harmed the class as a whole.

As the requested data is relevant, the Court next considers whether it is proportional to the needs of the case. This information is important to Fine Fare's bid for class certification. Moreover, Plaintiffs contend, and American Express does not dispute, that Plaintiffs cannot obtain the requested discovery from another source. Suppl. RFP Ltr. at 3; *see id.* at 4-6. The Court nonetheless must also consider the burden on American Express to produce the data. American Express emphasizes that the time required to collect—and the sheer volume of—the requested discovery creates an enormous burden. The Court agrees. Plaintiffs' proposed narrowed discovery requests can be tailored further to reduce the burden on American Express while still providing sufficient information to analyze damages for class certification purposes.

American Express offers to produce to Fine Fare "a list of all merchants who have incurred at least one EMV fraud chargeback" if a class is certified. RFP Ltr. at 6; Suppl. RFP Ltr. at 6. American Express shall produce that list now. From that list, Fine Fare shall select a sample of merchants to collect data regarding (1) merchant location transaction level chargebacks imposed for Liability Shift codes F30 and F31; (2) weekly merchant location level total chargebacks before and after the Liability Shift from January 1, 2012 to the present; and (3) total processing volume by merchant location from January 1, 2012 to the present.[8] The parties shall meet and confer to discuss an appropriate sample size. If the parties cannot agree to an appropriate sample size by [date], they shall so inform the undersigned with a joint three-page letter brief.

## B. Deposition Letter

The parties' next dispute concerns Topic No. 9 of Plaintiffs' Rule 30(b)(6) deposition notice, which asks American Express to designate a witness to testify about

> [t]he identity and description of your electronic databases, computer operating systems, record-keeping and record maintenance storing or containing documents responsive to Plaintiffs' Requests for Production and any of the subjects in Topics 1-6 from the October 7, 2016 Notice of Rule 30(b)(6) Deposition of Defendant American Express Company, including: (a) the name and position of persons who have physical possession of the documents; (b) where those documents are currently located; (c) the time period covered by those documents; (d) how those documents are maintained (i.e., in hard copy or electronic format); (e) if the documents are maintained electronically, then the identity of the software used to maintain the information; and (f) the time period for which you maintain the documents.

Dep. Ltr. at 2; Suppl. Dep. Ltr. at 2.

American Express first argues that it should delay producing a Rule 30(b)(6) witness until the Court rules on the parties' RFP Letter. Dep. Ltr. at 4; Suppl. Dep. Ltr. at 5. The Court now has ruled on the RFP Letter.

Thus, the question is whether Fine Fare may depose American Express' 30(b)(6) witness

---

[8] Plaintiffs' RFPs provide that "[e]xcept as otherwise specified, each document request concerns the time period from January 1, 2011 through the present (the 'Relevant Time Period')." First RFP § V; Second RFP § V. However, Plaintiffs' proposed request provides a date range from January 1, 2012 to the present. *See* RFP Ltr. at 4; Suppl. RFP Ltr. at 3-4. Given that Plaintiffs' updated requests focus on data from 2012 to the present, the Court does as well.

about that data. American Express contends that Plaintiffs no longer need to depose a 30(b)(6) witness to obtain information on the organization of American Express' systems because "[d]uring the November 29, 2016 meet and confer, American Express specifically explained that the data requested is not all in one place but instead is scattered across various databases." Dep. Ltr. at 5; *see* Suppl. Dep. Ltr. at 6. But Plaintiffs aver "the deposition would enable Plaintiffs to understand the types of data American Express has access to and how that information is kept which could eliminate duplicative or cumulative discovery[.]" Suppl. Dep. Ltr. at 3. "A deposition regarding all the matters detailed in Topic 9 provides a baseline for Plaintiffs so that [Plaintiffs] can tailor [their] discovery in a way that comports with American Express's actual systems and therefore avoid duplicative requests." *Id.*

Rule 30(b)(6) provides that

> a party may name as the deponent a public or private corporation . . . . The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6). "The persons designated must testify about information known or reasonably available to the organization." *Id.* The Court disagrees with American Express' contention that explanations provided during the parties' meet-and-confer are sufficient and that a deposition would be wasteful. *See* Suppl. Dep. Ltr. at 6. American Express explained the process of collecting the requested data prior to producing it. But Fine Fare may have specific questions about the data and its collection once it has had an opportunity to study it. Moreover, "there are strong reasons why a party strategically selects to proceed by oral deposition rather than alternate means, including the spontaneity of witness responses." *Kress v. Pricewaterhouse Coopers, LLP*, 2013 WL 2421704, at *5 (E.D. Cal. June 3, 2013) (citation omitted). Fine Fare may also seek to admit the deposition testimony at trial. *See* Fed. R. Civ. P. 32(a)(3). The Court thus grants Fine Fare's request to compel a 30(b)(6) witness. American Express must produce a 30(b)(6) witness to testify upon Topic No. 9 about documents produced in accordance with this Order.

## CONCLUSION

Based on the foregoing analysis, the Court **ORDERS** the following:

1. Fine Fare's request to compel production is **GRANTED IN PART**. American Express must produce data concerning a sample of merchants in accordance with this Order.

2. Fine Fare's request to depose American Express' Rule 30(b)(6) designee on Topic No. 9 is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 19, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California